**DAVIS, Agent, v. PETTITT. (No. 429–3853.)**

(Commission of Appeals of Texas, Section B. Feb. 27, 1924.)

**1. Trial ⬠215—Instruction in crossing accident case explanatory of statute and applicable to facts held erroneously refused.**

In an action for personal injuries sustained at a railroad crossing, on submission to the jury of special issue as to compliance with Rev. St. art. 6564, concerning blowing whistle, such submission being substantially in the words of the statute, the court erred in refusing defendant's requested instruction that if the whistle was sounded more than 80 rods from the crossing where the collision occurred and that at such point it was sufficient to constitute a warning to those about to use the crossing, the finding of the jury should be that the whistle was sounded 80 rods from the crossing; such instruction being applicable to the facts in the case.

**2. Railroads ⬠312(3)—Statutory duty to blow whistle for crossing stated.**

Rev. St. art. 6564, providing at what point the law allows a whistle on a locomotive to be sounded to relieve defendant of negligence, being indefinite and uncertain in some respects, construed to mean that the whistle must be blown at some point sufficiently near the crossing to be reasonably calculated to give warning to persons about to use the same; such point not to be nearer than 80 rods.

**3. Trial ⬠215—Instruction explaining statute on submission of special issue held necessary.**

Where a special issue submitted in a case is substantially in the words of a statute, which is indefinite and uncertain, it is necessary to explain its meaning to a jury of laymen.

**4. Railroads ⬠312(3)—Reasonable effect of signal test of compliance with statute.**

The test of compliance with Rev. St. art. 6564, providing at what point the law allows a whistle on a locomotive to be sounded to relieve defendant of negligence is not to be found in the intention to sound the signal for a particular crossing nor in the giving of the signal at a definite place, but in its reasonable effect.

**5. Railroads ⬠351(9)—Instruction on crossing signals held applicable to facts.**

An instruction in a crossing accident case as to sufficiency of compliance with statute concerning blowing the whistle, which required a warning "to those about to use the crossing" was not objectionable as not applicable to plaintiff and his companions, where there was no evidence that any others than plaintiff and his party were about to use it.

**6. Trial ⬠365(1)—In crossing accident case, question of immateriality of failure to sound whistle as proximate cause of accident held not presented.**

In an action for personal injuries sustained at a railroad crossing, where it could not be said, from the testimony and the answer of the jury to interrogatories, that the failure to ring the bell was by itself a proximate cause of the injury, no case was presented of immateriality as to the sounding of the whistle.

**7. Railroads ⬠345(1)—General denial puts in issue allegation of insufficiency of signals.**

In an action for personal injuries sustained at a railroad crossing, a general denial was all that was necessary to put in issue plaintiff's allegation of a failure to give the statutory signals.

**8. Trials ⬠215—On submission of special issues, a charge in explanation held improperly refused.**

Where a special issue was submitted to the jury in substantially the words of a statute, a request for a charge in explanation of the statute was improperly refused under Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a.

**9. Railroads ⬠350(7)—Whether whistle was sounded at proper place held for jury.**

In an action for personal injuries sustained at a railroad crossing, where the testimony was in dispute, whether reasonable notice of the approach of the train by sounding the whistle was given to persons who intended to use the crossing, *held* for the jury.

**10. Railroads ⬠351(16)—Charge as to care required from guest in automobile held properly refused.**

In a crossing accident case to recover for injuries to a guest in an automobile driven by another person, a charge on the issue of contributory negligence, which placed on the guest

the duty to exercise ordinary care to ascertain whether a train was approaching, "notwithstanding the fact that he was not driving," *held* properly refused, as his care or lack of care might depend at least in part, upon whether he relied or failed to rely upon his companion.

**11. Railroads ☞351(18)—Instruction as to duty of traveler to exercise care notwithstanding want of signals held properly refused.**

In a crossing accident case to recover for personal injuries to a guest in an automobile driven by another person, the court did not err in refusing a requested charge that plaintiff could not excuse any failure on his part to exercise ordinary care by showing failure on the part of train operatives to sound the whistle or ring the bell, where the evidence showed that plaintiff was using care for his safety, and that the omission to give signals was one of the circumstances that influenced his movements and made them those of a reasonably prudent man.

**12. Railroads ☞350(21)—Contributory negligence of guest in automobile held for jury.**

In a crossing accident case, evidence *held* not to conclusively show contributory negligence on part of plaintiff, a guest in an automobile.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by Mose Pettitt against James C. Davis, Agent. Judgment for plaintiff was affirmed by the Court of Civil Appeals (242 S. W. 783), and defendant brings error. Reversed and remanded.

Baker, Botts, Parker & Garwood, of Houston, Geo. P. Willis, of El Campo, and Proctor, Vandenburge, Crain & Mitchell, of Victoria, for plaintiff in error.

Jno. W. Parker, of Houston, for defendant in error.

STAYTON, J. This suit was brought for damages by reason of a collision at a public crossing between a train operated by the Director General of Railroads and an automobile in which Mose Pettitt, the plaintiff below, was riding. James C. Davis, Agent, was substituted as defendant. Judgment for plaintiff in the district court was affirmed by the Court of Civil Appeals, Justice Lane dissenting (242 S. W. 783). Defendant's application for writ of error was granted upon his first assignment, which raises the point that the trial court, in the submission of the case to the jury upon special issues, should have explained to them, in accordance with a requested charge, at what place the law allowed the whistle on the locomotive to be sounded in order to relieve the defendant of the negligence imposed by R. S. art. 6564, and that the Court of Civil Appeals erred in holding to the contrary. The particular special issue that was given in the

trial court submitted the question substantially in the language of the statute: that is, whether the whistle was sounded "a distance of at least eighty rods from the public road crossing." There was testimony that it was sounded for the crossing above the one at which the injury occurred; and defendant contends that this would have been sufficient, if a sufficient warning at the second crossing, in accordance with two decisions of the Supreme Court, presently to be noted.

The opposing contentions are that the special issue, as submitted, was in the words of the statute and needed no explanation; that the requested charge was properly refused because only applicable to a signal given for a remote crossing half a mile distant, instead of "for" the particular crossing of the accident, and hence was not within the statute; that the requested charge was erroneous in that it was not applicable to persons so far distant from the crossing as were Pettitt and his companions at the time the signal, if any, was given; that the finding of the jury that the bell was not rung, rendered error, if any, in the refusal of this charge, which applied alone to the sounding of the whistle, harmless, because the statute required both signals; that the charge was not justified, because no defense of its nature was pleaded; that it was not authorized by the evidence because the testimony, applicable to it, was incidental, not material, and beyond the theory of both parties; and that it was properly refused because not a definition or explanation but an attempt to inject a charge into a case that was being submitted on special issues.

These opposing contentions will be examined in the light of the record, the facts and the law, considered applicable to them.

Pettitt's petition alleged that the Director General "rested under a duty to give the statutory signals by bell and whistle upon approaching the said crossing," and that the train approached the crossing "without blowing the engine whistle and ringing the bell at a distance of at least 80 rods" from it and "without keeping the bell ringing until the said crossing was passed." To these allegations a general denial alone was pleaded by the Federal Agent.

The evidence showed that in the vicinity of the accident there were two public road crossings a half mile apart; that is, the crossing of the accident and an upper crossing, distant one-half mile. Six witnesses testified that no whistle was blown and no bell rung between these crossings. An equal number testified that a whistle was blown in the vicinity of the crossing of the accident, of whom three or four located it as between the two crossings. Prominent in all of the testimony was the version that a whistle was either sounded or not sounded "for" the crossing of the accident, and that in the im-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

mediate approach to the crossing was a whistling post at which it was designed that the whistle should be blown.

One of the witnesses who testified that no whistle was sounded between the crossings was standing at the time of the approach of the train within one or two hundred yards of the crossing of the accident. He had stopped at or about that point for the train to pass. On cross-examination, he testified that he stopped because he heard the train coming, in that he heard the whistle. "I heard the whistle. I heard the whistle about three-quarters of a mile away. * * * The train blew for the upper crossing." On re-direct examination, he repeated this testimony. This witness was plaintiff's witness. The locomotive engineer, who was a witness for defendant, testified, on cross-examination, that there was a whistling post for the upper crossing a quarter of a mile distant from it and three-quarters of a mile from the place of the accident. "I sounded the whistle for that crossing. When I did that I was right at the whistling post." He also testified, on the same cross-examination, that on a still day the whistle could have been heard at a distance of from three to five miles and that on the day of the accident it could have been heard a "couple of miles."

The sole ground of negligence submitted to the jury was with respect to the statutory signals. The special issues that were propounded upon that question are quoted:

"(1) Did those in charge of the locomotive fail to sound the whistle thereon, a distance of at least 80 roads (440 yards) from the public road crossing and fail at such distance to commence ringing, and to continue to ring, the bell thereon, until just before the collision occurred? Answer, 'Yes' or 'No.'"

"(2) If answer 'Yes' to special issue No. 1, then was the failure to thus sound the whistle and ring the bell a proximate cause of the injury of the plaintiff? Answer 'Yes' or 'No.'"

The only charge given in connection with these special issues was an explanation as to when negligence is "the 'proximate cause'" of an injury.

[1-5] The defendant requested the following charge:

"You are instructed that, if you believe from the evidence that the whistle of the engine was sounded at a distance of more than 80 rods from the crossing where the collision occurred, and that such point at which the whistle was so sounded was so situated as that said whistle so sounded at such point could be heard at and in vicinity of said crossing, and was sufficient to constitute a warning to those about to use the crossing of the approach of the train, you will in your findings under issue No. 1 find that the whistle was sounded at least 80 rods from the public crossing when the collision occurred."

The court refused the above charge, and the jury answered issue No. 1 and also issue No. 2 in the affirmative—that is, adversely to defendant. The approval, by the Court of Civil Appeals, of this ruling of the trial court is the basis of the assignment of error now under consideration.

In determining whether the ruling was erroneous, it will first be proper to quote the statute (R. S. art. 6564) upon which the negligence in the case was predicated:

"A bell of at least thirty pounds weight and a steam whistle shall be placed on each locomotive engine, and the whistle shall be blown and the bell rung at the distance of at least 80 rods from the place where the railroad shall cross any public road or street, and such bell shall be kept ringing until it shall have crossed such public road, or stopped; and each locomotive engine approaching a place where two lines of railway cross each other, shall, before reaching such railway crossing, be brought to a full stop; and any engineer having charge of such engine, and neglecting to comply with any of the provisions of this article, shall be punished for such neglect as provided in the Penal Code; and the corporation operating such railway shall be liable for all damages which shall be sustained by any person by reason of any such neglect; provided, however, that the full stop at such crossings may be discontinued when the railroads crossing each other shall put into full operation at such crossing an interlocking switch and signal apparatus, and shall keep a flagman in attendance at such crossing."

It will be noticed that, in some respects, the statute is indefinite and uncertain. The letter of it fixes a minimum distance, for the sounding of the whistle, of "not less than 80 rods," that is, one quarter of a mile. But the maximum is not defined. In that respect, the actual words of the statute might be complied with by the absurd resort of whistling only once for all crossings encountered in a day's trip. From the words of the statute, themselves, no answer is gotten to the question of where the whistle must be sounded when crossings are to be found many miles apart as in numerous places—particularly the unsettled, sandy, mountainous, and pastured parts of the state—nor where it must be sounded when they are reached every 100 yards, more or less, as in almost all of the towns and cities of the state. To say that, in the former case, a signal may be given at any place between crossings, provided it be given for the next crossing, and, although as much as 10 miles away from it, is no less disturbing than to say that, as to city "streets," it need not be given at all because they are at less distances apart than the minimum of one quarter of a mile.

The purpose of the statute must be looked to in order to set the maximum right. The primary purpose is to protect the public who are about to use crossings by giving them warning of the approach of any train a sufficient time before its arrival to enable them to get out of, or keep out of, its way. From

this, it will be seen that no particular distance is, or can practicably be, stated as a maximum. There is no regularity as to the occurrence of crossings. That the omission is a real design of the statute is evidenced by the fact that, although this law originated 71 years ago, and although it has been amended three times and revised three times since then, no distance has ever, in any of these legislative acts, been given, at which the whistle must be blown, provided the point be at least 80 rods from the crossing.

It appears that some other rule than that involving a definite place for the blowing of the whistle is needed and contemplated. The required rule is stated by the Supreme Court in the cases of Houston & T. C. Ry. Co. v. O'Neal, 91 Tex. 671, 47 S. W. 95, and Edwards v. St. Louis, etc., Ry. Co., 105 Tex. 404, 151 S. W. 289.

In the O'Neal Case, the decision was that the trial court erroneously charged a duty to sound the whistle "within 80 rods," and the court said upon the point:

"In order to comply with this statute the whistle must be blown for the crossing before passing the point 80 rods distant therefrom. The language 'at the distance of at least 80 rods' is not susceptible of any other construction. The blowing of the whistle after passing such point is not demanded by the letter of the statute, which only requires the continuous ringing of the bell thereafter. The reason for requiring the whistle to be blown before passing that point was to give at least that much warning from an instrument that could be heard a long distance. While the statute does not in terms fix the distance from the crossing at which the whistle must be blown otherwise than to direct that it shall be done before passing such point, its spirit clearly requires it to be blown so near that under all the circumstances it would be reasonably calculated to warn persons about to use the crossing. It results, that, in order to comply with the statute, the whistle must be blown at some point sufficiently near the crossing to be reasonably calculated to give warning to persons about to use same, such point not to be nearer to such crossing than 80 rods."

In the Edwards Case, the whistle was blown at a greater distance than 80 rods from the crossing and the court, deciding that this action was within the statute, said that the statute—

"requires that the whistle must be sounded 'at least' 80 rods, and being sounded in obedience to that law, it was necessary and usual. It need not have been blown at any particular distance from the crossing if not less than 80 rods and at such point as would give notice of the train's approach to persons who might be near to and intending to use the public crossing."

In other words, coming now to the contentions of Pettitt, the statute means something that it does not verbally say. The special issue that was given was substantially in the words of the statute. The Supreme Court and the Courts of Civil Appeals, in this respect and other respects, have, in many cases, experienced the necessity of explaining to trained legal minds the meaning of the statute. It follows that it was necessary, in connection with the special issue given in this case to explain its meaning to a jury of laymen. They required a guide in that respect, to give some definiteness to a matter entirely indefinite.

And especially did they need a guide in the light of the frequent testimony before them leading to the opinion that the whistle must have been blown "for" the crossing of the accident and at the "whistling post" a quarter of a mile distant from that crossing. The law is not complied with and cannot, in the interest of preventing evasion, be complied with, by the mere intention with which the signal is given nor by a definite place for giving it; but the test is its reasonable effect.

The requested charge may not be criticized as being inapplicable to Pettitt and his companions. Without decision of the question of whether, as contended by his counsel, the signal must have been sufficient to extend to persons however distant they may have been from the crossing, it may be noted that this particular charge was broad enough to include this particular car, for it required a warning as to "those about to use the crossing," and there was no evidence that any others than this party were about to use it. That being the case, it could have been applicable to them alone.

[6] There was a clear conflict of testimony as to whether the bell was rung at all. If the bell was not rung and the failure to ring it was a proximate cause of the accident, then it was immaterial to plaintiff's case whether the whistle was blown many times and at many places or not at all. However, it cannot be said from the testimony, and it cannot be said from the answer of the jury, that the failure to ring the bell was, by itself, a proximate cause of the injury. The jury did not answer that failure to ring the bell and failure to blow the whistle were proximate causes, nor that each was a proximate cause, but their answer was that the failure in both respects was "a proximate cause." No case is therefore presented of immateriality as to the sounding of the whistle.

[7] The plaintiff alleged a failure to give "the statutory signals." Under the construction of the statute in the O'Neal and Edwards Cases, negation of the reasonable sufficiency of the signals to give warning to persons about to use the crossing was a part of the predication of statutory negligence. In other words, that element was a part of plaintiff's case. So that a general denial on defendant's part was all that was necessary

to put it in issue; and no special plea was required. Willis v. Hudson, 63 Tex. 678.

The question was also raised by the evidence. The testimony of the two witnesses, already mentioned, could reasonably have been considered by the jury as emphatic and trustworthy because of the fact that one of them was plaintiff's witness and the other gave independent testimony of the fact that the whistle was blown and could have been heard a much farther distance, on plaintiff's cross-examination. The circumstances could have been regarded as giving peculiar force to the truth of the witnesses' testimony. The testimony was therefore material, and the question was raised by the evidence. It would not be the less so because, in response to plaintiff's evident theory, defendant elicited testimony of the blowing of the whistle "for" the crossing of the accident and at the "whistling post" of that crossing. Defendant also elicited from a substantial source this testimony that the whistle was sounded at another place and in a way that the jury could have found was as sufficient to stop plaintiff as it was to stop plaintiff's witness.

The requested charge was, it is considered, within the rules laid down in the O'Neal and Edwards Cases, and should have been given.

[8] It could not properly have been refused upon the theory that it was an attempt to substitute, for special issues, a general charge, as in Texas & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188, but it was in substance a request for an explanation which, in the instance of special issues, is a statutory right (Vernon's Statutes, art. 1984a) the refusal of which is error. Gussie Fox v. Dallas Hotel Co., 111 Tex. 461, 475, 240 S. W. 517.

Assignments of error second through sixth involve the same ruling as that above discussed, and are controlled by the same considerations.

[9] The seventh and eighth assignments of error, next following, raise the point that the undisputed evidence showed the necessary signal by whistle; the contention being that this resulted by force of the fact that witnesses, situated between the approaching train and the crossing of the accident and some 100 yards away from that crossing, heard the whistle, and that the engineer gave opinion that the signal could have been heard a distance of two miles. This testimony, however, though raising the issue, does not conclusively establish the fact that reasonable notice of the approach of the train was given to persons who might be near to and intending to use the crossing. The question was one for the jury, and especially so in the light of testimony of other witnesses, who were listening at or near that place, that they did not hear the signal. The holding of the Court of Civil Appeals is conclusive upon this phase of the case.

[10] When he was injured, Pettitt was a guest in an automobile driven by another person. The Federal Agent complains, in his ninth assignment of error, of the refusal of a charge, requested by him, which, on the issue of contributory negligence, placed upon Pettitt the duty to exercise ordinary care to ascertain whether a train was approaching "notwithstanding the fact that he was not driving the automobile." The charge, if given, would have been apt to make the jury believe that they could not consider one of the elements of the accident that might have been important in their solution of the issue. For this reason, it was properly refused. It cannot be said, as a matter of law, that the average guest may not place some reliance upon the diligence of his driver. He would surely not in all cases be negligent because the driver was negligent, nor free from negligence because the driver was diligent (Galveston, H. & S. A. v. Kutac, 72 Tex. 651, 11 S. W. 127; Lyon v. Phillips [Tex. Civ. App.] 196 S. W. 995), but in some cases his care or lack of care would very properly depend, at least in part, upon whether he relied or failed to rely upon his companion. The circumstances furnishing the basis of an ordinarily prudent man's acts or omissions in questions of negligence, may include animate as well as inanimate objects.

[11] The tenth assignment of error involves the refusal of a charge, explanatory of the issues of contributory negligence, in which ordinary care for his own safety was imposed upon Pettitt; and in which the jury were informed, in that connection, he could not "excuse any failure on his part to exercise this care by showing a failure on the part of those in charge of the train to sound the whistle and ring the bell." As a proposition of law, the charge was correct. For contributory negligence is not excused by the negligence of the other party; and, consequently, as has been decided, the law does not permit mere reliance upon statutory duty totally to obviate all other care on plaintiff's part. But there was evidence in this case from which a jury could have concluded that Pettitt was using care for his own safety, and that the omission of the statutory signals was one of the circumstances that influenced his movements and made them those of a reasonably prudent man. In such a case, the failure of signals was not an excuse for contributory negligence but entered properly into the question of whether his acts in fact were contributory negligence—whether under the circumstances he acted as a reasonably prudent man would have acted. He was not required, in the exercise of due care, to anticipate a breach of positive law on the part of the operatives of the train (II Thompson on Negligence, 289), but, under much evidence in this case, had "the right to expect" that the law would be obeyed by them (International & G. N. Ry.

Co. v. Graves, 59 Tex. 332, 33 Cyc. 1027). The requested charge was calculated to cause the jury to believe that, in the consideration of the question of contributory negligence, any reliance upon statutory signals on the part of Pettitt should be excluded, and for that reason, under the evidence in this case, is considered to have been properly refused.

[12] The eleventh assignment of error and the six concluding assignments which depend upon it should, it is thought, be overruled. The matter presented is that the judgment should be reversed and rendered because the evidence conclusively showed contributory negligence on the part of Pettitt. The cases cited and the statement of facts have been read and the testimony collated. In view of the disposition which it is thought proper should be made of the case, statement and discussion of the testimony is omitted. Nothing has been found in it or the opinions cited to except the case from the general rule that contributory negligence is, and should be, treated as a question of fact nor to except it from the force of the application of this rule in Trochta v. M., K. & T. Ry. Co. (Tex. Com. App.) 218 S. W. 1038; Texas & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188, and Lancaster v. Browder (Tex. Com. App.) 256 S. W. 905.

In view of what has been said upon the first assignment of error, we recommend that the judgments of the courts below be reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.