**EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited, v. LIGHT et al.\***
(No. 6876.)

(Court of Civil Appeals of Texas. Austin. June 24, 1925. Rehearing Denied Oct. 14, 1925.)

1. **Master and servant** ☞375(2) — **Death of workman on way home, on road over which employer had right of way, held compensable.**

Under Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), death of quarry employee due to falling from and being run over by truck owned by another employee, in which deceased was riding by private arrangement, *held* compensable, under section 1 of part 4 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82), where injury occurred while deceased was returning from work, on roadway over which employer had right of way by virtue of lease of quarry, and which was sole route employees could travel.

2. **Master and servant** ☞348—**Compensation law liberally construed.**

Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), will be given liberal application to end that it may effectively discharge humanitarian purposes for which it was enacted.

3. **Master and servant** ☞375(1)—"**Course of employment" does not necessarily end when employee leaves premises.**

"Course of employment" does not within meaning of Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) necessarily end when employee leaves premises.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

4. **Master and servant** ☞372—**Contention of insurer there was no risk to be borne by employment, and therefore none insured against, held without merit.**

In suit by insurer to set aside award of compensation for death of quarry employee by falling from truck of another employee in which he was returning home on road, over which employer had right of way by virtue of lease of quarry, contention that, road being level and smooth, there was no risk to be borne by employment, and therefore none insured against, is without merit.

5. **Master and servant** ☞418(3)—**Insurer accepting premiums and making no objection in pleadings cannot deny employer was duly insured.**

Contention of insurer, in its action to set aside award of compensation, that proof did not show that employer was duly insured, is without merit, where proof shows policy issued to one who incorporated business and assigned policy to corporation, and that insurer accepted premiums from corporation and raised no such issue in pleadings.

6. **Master and servant** ☞417(5)—**Definition of "course of employment" in language of act sufficient.**

Court having defined "course of employment" in language of Workmen's Compensation Act, pt. 4, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82), need give no further charge defining those terms.

7. **Master and servant** ☞417(5)—**Taking issue of amount of compensation from jury held not improper under evidence.**

In determining, under Workmen's Compensation Act, pt. 4, § 1, subd. 2 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82), compensation for death of employee who had not worked in employment whole of year, court's refusal to submit issue of amount of average daily wage of person of same class who worked whole of year, and his action in deciding it himself, *held* not erroneous under evidence.

Appeal from District Court, Llano County; J. H. McLean, Judge.

Suit by the Employers' Liability Assurance Corporation, Limited, against Mrs. Minnie Light and others to set aside an award, by the Industrial Accident Board, of compensation for the death of defendant's husband. Judgment for defendants, and plaintiff appeals. Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

\*Writ of error refused November 25, 1925.

Vinson, Elkins, Wood & Sweeton, of Houston, for appellant.

King & York, of Austin, for appellees.

BAUGH, J. This is an appeal from the judgment of the district court of Llano County, awarding appellees compensation against appellant, under the provisions of the Workmen's Compensation Law. See Gen. Laws of 1917, c. 103; V. S. 1918 Supp. to Civ. Stats. arts. 5246—1 to 5246—91. The suit in the trial court was brought to set aside an award by the Industrial Accident Board of Compensation to Mrs. Minnie Light and her children for 360 weeks, at $13.85 per week, on account of the death of the husband and father while in the employ of the Dealers' Granite Corporation, which carried a policy under said Workmen's Compensation Law with appellant company.

The chief question raised on the appeal, as in the lower court, is whether or not the injury which caused the death of James D. Light was received by him in the "course of his employment."

The Dealers' Granite Corporation, at the time of the injury, operated a granite quarry on 8¼ acres of land about 12 miles southwest of the town of Llano in Llano county, leased by it for that purpose, and situated out in a pasture about 3 miles from the public road running into the town of Llano. The lease which gave the corporation the right to operate the quarry contained, among others, the following provisions:

"(5) The second party, for the purpose of operating and working said land and the quarry or quarries thereon now opened up or which may hereafter be opened up and taking of granite stone from said land hereunder, shall have the right of ingress and egress, on, upon, over, and across, said 8¼ acres of land and any other lands of the first party over the route and road now established and used in going to and from the granite quarry in and upon said 8¼ acres of land, known as the Kothe quarry, to the public road, known as the Llano and Six Mile road, leading to the town of Llano, and over the most direct and practicable route from any quarry or quarries which the second party may open up on said land hereby leased to the said road leading from said Kothe quarry to the said Llano and Six Mile public road."

"(13) The second party obligates and binds himself to see that all gates and gate posts of the first party are replaced if torn down by his employees, and further agrees to see that all gates used by him in passing to and from said land and quarries thereon are kept closed by his employees."

The testimony also conclusively showed that this road was a private road, a part of which had been built by the Dealers' Granite Corporation, and was the only way by which granite could be removed from the quarry to Llano, the nearest railroad point, and the only route by which employees of said corporation could reach the quarry from the town of Llano. Due to lack of facilities and accommodations at the quarry, most of the employees lived in Llano, went to their work in the morning, and returned home at night by traveling the public road about 9 miles out from Llano, entering a gate into the Stewart pasture, and then about 3 miles over the private road through the pasture to and from the quarry. The deceased, along with the other employees, had gone to the quarry on the day of the injury, and had worked there until about noon, when a rain prevented further work for that day. When the rain stopped the work, he, along with several other employees, started to return to their homes at Llano, riding on a light truck belonging to an employee, one Felix Hopson, under a private arrangement between them. Hopson habitually hauled employees back and forth over this route for hire, worked for the corporation himself, and also hauled granite for them from the quarry into the town of Llano. On the day in question, while en route to the public road over this private road through the pasture, and when about 1¼ miles from the quarry, James D. Light slipped from the truck on which he was riding, and was run over and was killed.

[1] The Dealers' Granite Corporation furnished no transportation for its employees to or from the quarry. Their time began at the quarry and stopped when they quit work. They worked by the day, and the deceased was being paid $4 per day of 9 hours at the time of his death. Under these facts and circumstances it is the contention of the appellant that Light ceased to be an employee of the Dealers' Granite Corporation when he left the quarry, was not in the course of his employment at the time of his death, but was subject to risks incident to the public in general in traveling this road, and not therefore entitled to compensation.

We do not agree with this contention. Nor shall we enter into any extended discussion of the issue here presented. Both appellant and appellee have cited us to numerous cases from other states in support of their respective contentions, but, as stated in the case of American Indemnity Co. v. Dinkins (Tex. Civ. App.) 211 S. W. 952, which is the Texas case chiefly relied upon by appellant, the decisions of other states are not of great service in construing the Texas act as to what is meant by the phrase "injury sustained in the course of employment." When the Legislature undertook to define this language by express provisions of the act itself, it of necessity rejected the definitions and judicial constructions placed thereon by the courts of other states. After setting out injuries not included (none of which have any application to this case), the act provides that such injury—

"shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession

of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Section 1 of part 4, c. 103, Gen. Laws 1917; 1918 Supp. to V. S. R. S. art. 5246—82.

[2] We need not now go to the decisions of other states in the interpretation and application of our statute to the case before us. It has been the uniform practice of our courts to give to the terms of the act a most liberal application, to the end that it may most effectively fulfill and discharge the humanitarian purposes for which it was enacted. American Indemnity Co. v. Dinkins, supra; Millers' Mut. Casualty Co. v. Hoover (Tex. Com. App.) 235 S. W. 863, and cases there cited; Employers' Indemnity Corp. v. Felter (Tex. Civ. App.) 264 S. W. 137. Nor are there any new questions presented to us in the case before us. We think this case under the undisputed facts comes clearly within the principles enunciated and the rules laid down in the able and exhaustive opinion of Judge Greenwood in Lumberman's Reciprocal Ass'n v. Behnken et al., 112 Tex. 103, 246 S. W. 72, and in Kirby Lbr. Co. v. Scurlock, 112 Tex. 115, 246 S. W. 76.

The facts in the Behnken Case were very similar to those in the instant case, and practically the same condition and circumstances differentiate this case from the Dinkins Case, relied upon by appellant, as differentiated the Behnken Case therefrom. Dinkin was killed upon a public street entirely away from his place of employment, on which all the public had equal rights to travel and equal risks of injury separate and distinct from any employment. In the instant case the road on which Light was killed was in no sense a public road. It was a private passage over private property, not only necessary to the Dealers' Granite Corporation in the conduct of its business, but the only route over which such corporation could gain access to its quarry or remove granite therefrom, and the only route over which Light could, or had any right to, travel in order to reach his place of employment, or return therefrom to his home. The same lease that gave the right to operate the quarry confined the corporation's employees to this road, and imposed upon it the duty of keeping the gates closed so as to exclude trespassing. The right of both employer and employees to use the road at all depended on the same contract that created the employment, and both rights ran concurrently. When the right to operate the quarry ceased, the right to use this private roadway ceased, and vice versa. The only right Light had to be upon this road at all was by virtue of his employment, and, if he worked for the Dealers' Granite Corporation at all, he must go and come over this road. When injured, he was returning from his work to his home

in his usual and accustomed manner, over the only way provided by his employer for him to travel, and we think unquestionably the risks incident thereto were risks incident to and incurred in the business as much as if his injury had occurred at the quarry itself as he was leaving his work there.

[3] It is well settled that the "course of employment" does not, within the meaning of the Compensation Act, necessarily end when the employee lays down his tools, nor when he leaves the premises. The act itself so provides. The facts of the particular case must determine whether the relationship of master and servant existed at the time, whether the employee be on or off the premises, actually engaged in his particular task, or en route to or from his particular labor. I. & G. N. Ry. Co. v. Ryan, 82 Tex. 565, 18 S. W. 219; Cudahy Packing Co. v. Parramore, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532. And as stated in the latter case:

"The liability is based, not upon the act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured. * * * Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case."

See, also, Judson Mfg. Co. v. Industrial Accident Com., 181 Cal. 300, 184 P. 1; 40 Cyc. 84; Jones v. Casualty Reciprocal Ex. (Tex. Civ. App.) 250 S. W. 1073.

We deem further discussion of this phase of the case unnecessary. The contentions of appellant are fully discussed and disposed of adversely to it in the Behnken Case, supra, and based upon that case we overrule them.

[4] Nor is there any merit in appellant's contention that only where there is a "danger caused by the permanent condition of such place," or means of access to such place of employment, such as a railroad crossing or other similar hazard, is there a risk incident to the business; his contention being that, inasmuch as the place where Light was killed was level, smooth, and fraught with no hazards, there was no risk to be borne by the employment, and hence none insured against by appellant. The degree of the danger incurred, or the extent of the hazard involved have no bearing whatever on the rights of the beneficiaries to recover. That might be matter for the insurance company to consider in regulating the premium on their policy, but, if the relationship of employer and employee exists at the time, and the injury occurs in the course of the employment, and the risk is incident thereto, it is wholly immaterial whether such risk, danger, hazard, or whatever it is termed is great

or small. The right of recovery is based upon the relationship, and not on the danger involved.

[5] Appellant also contends that the proof fails to show that the Dealers' Granite Corporation was duly insured under the policy. There is no merit in this. The proof showed that one Faubion, while operating the quarry individually, procured the policy from appellant's agent at Llano; that shortly thereafter, while the policy was in force his business was incorporated as the Dealers' Granite Corporation, and all assets including the policy assigned to the corporation, and the appellant's agent notified of that fact; that no objection was made thereto, and thereafter the appellant company received and accepted the premiums paid by the corporation and continued the policy in force. Having elected to accept the corporation in lieu of Faubion, after due notice, as its policy holder, having raised no such issue in its pleading, and none such having been submitted to the jury nor requested by appellant, it cannot now be heard to complain.

[6] Nor was it error to refuse the special charges defining the terms "course of employment" requested by appellant. These requested charges were taken largely from the language of the opinion in Jones v. Casualty Reciprocal Ex., supra. However, the court in his charge had already defined these terms in the language of section 82 of the Compensation Act itself, which expressly defines what is meant by "injury sustained in the course of employment." The definition made by the act itself is about as clear and explicit as any we have found, and was sufficient. Having already sufficiently defined the issue in his main charge, there was no error in refusing other charges requested by appellant attempting further definition of the same issue.

[7] The only remaining contention of appellant is that the court erred in refusing to submit the following requested special issue to the jury and to admit some of the evidence offered in support of same, viz.:

"What was the average number of days per week worked by the employees of the quarry at which James Dillard Light worked and the other quarries in that immediate vicinity for the period of one year prior to the death of James Dillard Light?"

Light was killed on August 27, 1924. It is undisputed that he was not employed by the Dealers' Granite Corporation during the months of April and May, nor the early part of June of that year. In arriving at his "average weekly wages," therefore, they are to be determined under the provisions of sub-division 2 of section 1 of part 4 of the Compensation Act, which reads as follows:

"If the injured employee shall not have worked in such employment during substantially the whole of the year, his average annual [wage or] wages shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed."

Though the requested issue was refused, the court in his judgment made the following findings of fact on this issue:

"It further appearing to the court from the pleadings of the defendant, and the evidence introduced thereon, the matter being undisputed that at the time of the death of the said James Dillard Light, the wages of said deceased employee was $4 per day, and that deceased was employed 6 days per week; that said deceased had not worked in the employment in which he was working at the time of his injury and death either for the same employer or another, substantially the whole of the year immediately preceding his injury and death—therefore the court finds that the average daily wage which was earned by an employee of the same class as the deceased, James Dillard Light, working substantially the whole of the preceding year, in the same or similar employment, in the same or a neighboring place as that at which the said James Dillard Light was working at the time of his death was $4 per day."

Two of the witnesses did testify that, because the quarry was open and exposed to the weather, its operation was controlled somewhat by weather conditions—one estimating the average operation for the entire year at 16 working days per month and the other at 20, or perhaps more. These witnesses, however, stated that their estimates were purely guesses, and not based upon any records kept, and that such estimates were based upon the weather. This contingency, as a matter of common knowledge, is too uncertain to base a judgment upon, or to set aside one rendered upon sufficient evidence. The trial court may have considered the evidence offered on the issue requested wholly insufficient to go to the jury, and we are not prepared to say that his refusal to do so was error. We think that the amount arrived at was fairly and properly determined under the method provided in the Compensation Act, and that the judgment of the trial court and the award of the Industrial Accident Board should be sustained.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.