**TEXAS INDEMNITY INS. CO. v. CLARK.***
No. 12649.

Court of Civil Appeals of Texas. Fort Worth.
March 12, 1932.

Rehearing Denied May 7, 1932.

Scott, Brelsford, McCarty & Brelsford, of
Eastland, for appellant.

J. P. Simpson and J. D. McComb, both of
Jacksboro, for appellee.

CONNER, C. J.

This is an action under the Workmen's
Compensation Act (Rev. St. 1925, art. 8306 et
seq., as amended), originally instituted be-
fore the Industrial Accident Board of the
state, in which Floyd Clark alleged that on
January 12, 1928, he was an employee of the
Prairie Pipe Line Company, a subscriber un-
der the Workmen's Compensation Act, and
that the defendant, the Texas Indemnity In-
surance Company, appellant herein, was the
insurer for the said pipe line company, and
that on said date the claimant, Floyd Clark,
while in the course of his employment, was
riding in an automobile in the town of Jacks-
boro, Jack county, Texas, and that said auto-
mobile turned over, crushing and injuring
claimant's right arm at the elbow.

After a hearing before the Industrial Ac-
cident Board, on the 20th day of April, 1928,
appellee's claim of compensation was denied,
and an appeal from the order of the Accident
Board was taken to the district court of Jack
county where the cause was tried on March
9, 1931.

The principal issue on the trial of the cause
in the district court was whether claimant,

Floyd Clark, was in the course of his employment; within the meaning of the Workmen's Compensation Act, at the time of the accident complained of.

A brief outline of the evidence is to the effect that Floyd Clark, on and prior to January 11, 1928, was one of a gang of employees of the Prairie Pipe Line Company, engaged in repairing a leak in the pipe line in Palo Pinto county; that on the afternoon of January 11, 1928, at a time variously stated by different witnesses to be from 2:30 to 4:30, the work in Palo Pinto county was completed, and the workmen, with the exception of appellee, Clark, and Aubrey Jones and Gordon Jones, were transported from Palo Pinto county to Jack county where the gang was to work the next day. Clark and the two Jones boys were ordered, or permitted, as variously stated by these parties, to remain in Mineral Wells, Palo Pinto county, until the next morning, when they were to report for work in Jack county, some 6 or 8 miles east of the town of Jacksboro. The evidence shows that the three workmen last named left Mineral Wells early on the morning of the 12th of January, 1928, for Jacksboro, at which point they arrived about 11:30 o'clock a. m.; there they obtained dinner, visited a barber shop, and had their hair cut, and proceeded on a search for a room in which Clark could lodge during the labor in Jack county; it being in evidence that the foreman of the gang did not maintain a camp or facilities for housing his employees during their labor. During the search, and while Clark and the two Jones boys were riding in an automobile in a westerly direction on one of the streets of the town of Jacksboro, the car in which they were riding, a private conveyance, and at the time being driven by one of the Jones boys, turned over, and Clark had an arm crushed and was injured as alleged. The evidence further shows that the other members of the Prairie Pipe Line Company gang went to work as usual at 7 o'clock on the morning of January 12th near the town of Jacksboro, and that Floyd Clark and the two Jones boys did not work at all on that day.

The evidence relating to the extent of Clark's injuries need not be stated, inasmuch as no question relating thereto is presented on this appeal.

The case was submitted to a jury upon a single issue, which, with the answer of the jury thereto and the accompanying explanatory paragraph, reads as follows: "Was the plaintiff, Floyd Clark, at the time of his injury, in Jack County, Texas, on January 12, 1928, in the course of his employment with the defendant, as that term 'in the course of his employment' is hereinafter defined? Answer: Yes.

"You are instructed that the term 'in the course of his employment,' as that term is used in the charge above includes all injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon his employer's premises or elsewhere."

Appellant requested the court to give its peremptory instruction directing the jury to return a verdict for the defendant insurance company. Error is assigned to the action of the court in refusing that instruction. Appellant's contention is to the effect that the uncontroverted evidence clearly shows that Clark's injury was not sustained in the course of his employment, and hence no right of recovery was shown. The contention so, stated constitutes the vital question in this case presented for our determination.

The Workmen's Compensation Law makes compensable all injuries, with exceptions not necessary to now notice, "of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Article 8309, Rev. Civ. Statutes. The cases relating to the subject do not appear to be altogether harmonious.

In the case of American Indemnity Co. v. Dinkins (Tex. Civ. App.) 211 S. W. 949, cited in behalf of appellant, it appears that an electric engineer registered out for the day at the entrance gate, and started for home to secure rest. He had proceeded but a short distance when he was struck by an automobile and injured. The Beaumont Court of Civil Appeals held that the injury was not sustained in the course of his employment, within the meaning of the Employers' Liability and the Workmen's Compensation Law.

The case of London Guaranty & Accident Co. v. Smith, 290 S. W. 774, by the Waco Court of Civil Appeals, writ of error refused, also cited in behalf of appellant, is one where a Miss Eura Smith, a store clerk, was directed by her employer to go get her supper and return as soon as possible so as to be ready to go with him to inspect certain merchandise. While crossing the street to reach her boarding place, she was struck by a passing automobile and injured. The court held that the injury had not been received in "the course of employment" of her employer, within the meaning of the Compensation Act.

The case of Wynn v. Southern Surety Co., 26 S.W.(2d) 691, by the Waco Court of Civil Appeals, writ of error refused, is one in which it appears that a traveling salesman, while within his trade territory, was struck by an automobile between 6 and 7 o'clock on Sunday afternoon while proceeding to his hotel after the evening meal. It was held that

as a matter of law the salesman was not acting in the course of his employment. See, also, Southern Casualty Co. v. Ehlers (Tex. Civ. App.) 14 S.W.(2d) 111; G., H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S) 367; London Guarantee & Accident Co. v. Thetford (Tex. Com. App.) 292 S. W. 857; Royalty Indemnity Co. v. Madrigal (Tex. Civ. App.) 14 S.W.(2d) 106; Guivarch v. Maryland Casualty Co. (C. C. A.) 37 F.(2d) 268; article 8309, Rev. Civ. Statutes.

A more liberal construction of the statute would seem to have been adopted in the following cases: In Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 105, 246 S. W. 72, 74, 28 A. L. R. 1402, it appears that the plant of the company was situated on a line of railway, on the opposite side of which L. Behnken, an employee, together with his wife and children, lived in a rented house owned by the company. Behnken in returning from dinner at his home to resume work was struck and killed by a railway train at the crossing. Our Supreme Court, in an opinion by Mr. Justice Greenwood, held that his injury was sustained in furtherance of the business of his employer. It was there said: "He was upon the crossing provided as the means of access to his work solely because he was an employee. He encountered the dangers incident to use of the crossing in order that he might perform the duties imposed by his contract of service. Without subjecting himself to such dangers he could not do what was required of him in the conduct of the lumber company's business. * * * To hold that he was not acting in furtherance of the affairs or business of the lumber company would be to give a strict interpretation to this remedial statute, which should be liberally construed with a view to accomplish its purpose and to promote justice."

In the case of Federal Surety Co. v. Ragle, 25 S.W.(2d) 898, by this court, writ refused, it appears that Ragle was a foreman for a partnership engaged in drilling oil wells on a farm some six miles from the town of Bryson in Jack county. No arrangement had been made upon the oil lease to house or care for the employees, and a number of them, including Ragle, went to and fro between the lease and Bryson in their own conveyances; that a few minutes before the end of a day's work Ragle sent one of the employees to the car of a co-worker with whom he had arranged to ride home to crank the car and get ready for the journey. The employee reported that he was unable to start the motor, and Ragle repaired to the car, and, in an effort to crank it, a spark plug or something blew out and struck him in the eye, which resulted in a complete loss of its sight. On a writ of error our Commission of Appeals, section A, held that the Workmen's Compensation Law is remedial and should be liberally

construed with a view to accomplish its purpose and promote justice, when injuries arise "out of and in course of employment," where necessarily or reasonably inherent or incidental to conduct of employer's business, and upheld the ruling of this court. See 40 S.W. (2d) 63.

The case of Petroleum Casualty Co. v. Green (Tex. Civ. App.) 11 S.W.(2d) 388, is similar in its facts and in the conclusion reached to the case of Ragle. See, also, Southern Surety Co. v. Shook, 44 S.W.(2d) 425, by the Eastland Court of Civil Appeals; Commercial Casualty Ins. Co. v. Strawn, 44 S.W.(2d) 805, by the Waco Court of Civil Appeals.

■ We are disposed to approve the more liberal line of cases last cited as we construe them, and to hold that, if under the facts stated a jury should find that appellee, Clark, was an employee of the Pipe Line Company, within the meaning of that term as defined in the Workmen's Compensation Law, article 8309, at the time he was injured, and that the company had no means of caring for its employees at the location of the work, and appellee was injured, as he and others testified, while in the effort to secure a rooming place, none having been provided at the camp, his injury would be compensable under the act relating to the subject. We think a jury could reasonably conclude under such circumstances that Clark's act in securing a necessary rooming place was incidental to and in furtherance of his duty as an employee of the company, and we hence conclude that the court committed no error as assigned in overruling appellant's general demurrer to appellee's petition and in refusing to submit appellant's peremptory instruction.

■ We find no error in the court's definition of the term "in the course of employment," as given in its main charge, inasmuch as the definition seems to be in the language of article 8309, and in accord with the decision in the case of Employers' Liability Assurance Corp. v. Light (Tex. Civ. App.) 275 S. W. 685. We are of the opinion, however, that two of the rulings of the trial court assigned as error will require a reversal of the judgment. The first is presented by the following bill of exception, which was duly approved by the court, omitting formal parts, to wit: "Be it remembered that upon the trial of the above entitled and numbered cause on the 9th day of March, 1931, while the plaintiff Floyd Clark was testifying as a witness in his own behalf on redirect examination, and after he had testified that on the 12th day of January, 1928, while looking for a room in Jacksboro, Texas, he was injured in an automobile accident, and had also testified that he had been at work for the Company near Palo Pinto, Texas, on January 11th, and had been told to move to Jacksboro and

report for work near Jacksboro, on January 12th, counsel for plaintiff asked the witness this question: 'Do they still owe you for the work you did on the 12th of January,' to which question defendant then and there objected on the ground that said question called for a conclusion of the witness, which objection the Court overruled and permitted said witness to answer, 'Yes', to which action of the court the defendant then and there in open court, and before said witness had made answer, excepted and herewith tenders his bill of exception and prays that the same may be allowed by the court."

■ Article 2237, subd. 1, Rev. Civ. Statutes, provides that: "No particular form of words shall be required in a bill of exception; but the objection to the ruling or action of the court shall be stated with such circumstances, or so much of the evidence as may be necessary to explain, and no more, and the whole as briefly as possible."

In construing this statute in the case of Morgan v. Maunders, 37 S.W.(2d) 791, 798, this court, on a motion for rehearing, said that: "It seems to us that in view of the requirements of our statute, the nature of the subject and of the duties of an appellate court, if a bill of exception, duly signed and approved by the trial judge and otherwise unobjectionable, is presented for review without explanation, the presumption should be indulged that the court did his duty in approving the bill and that there was no modifying or justifying explanation to be made."

This construction of the bill seems to be in harmony with the later expression of Judge Ryan, of section B of the Commission of Appeals, in Texas Indemnity Ins. Co. v. Mc-Curry, 41 S.W.(2d) 215, 218, where, in ruling upon the sufficiency of a bill of exception, he said: "The bill of exceptions is not required to negative any possible fact or state of attending circumstances that would render the objectionable matter without prejudicial effect. Rather the presumption would be that the trial judge did his duty and that there was no modifying or justifying explanation to be made."

■ In the same opinion the court cited with approval the case of Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765, and other cases following it, which hold, in effect, that, if a ruling complained of is erroneous as a matter of law, the complaining party is entitled to a reversal of the judgment if under all the circumstances there is any reasonable doubt of its harmful effect.

■ It seems clear that the answer of the witness embodied a conclusion of law and the bill of exception contains no explanation from which it can be said that it was without harmful effect. Therefore, under the decision of Bell v. Blackwell, supra, and other

cases cited in the same connection, the presumption is that the answer was prejudicial, and, if we should go to the statement of facts, in a spirit of liberality of construction, which we are not required to do, we would find that, while appellee testified that it was the custom of the company to pay for time spent in moving from one camp to another, the testimony of other witnesses indicate that this was true only when parts of a working day were so spent. And the foreman, Henry M. Sonner, testified, among other things, as follows: "With reference to your question as to whether the Company allows men time for the actual time of going from one job to the other, will say that when they go right out on the job early in the morning they get time for that day. I have never allowed time for the employees to go out and hunt rooms; I don't know whether any of the others allowed it on the gangs, but I never did. I did not allow Mr. Clark time for the day of the accident. * * * I never allowed my men time to hunt for lodgings. I don't know that the Company never did allow employees time for moving time. I am just testifying to what I had been doing with my gang."

The evidence shows that appellee was a day workman, no contract of employment for other periods appearing, and the answer of the witness, if accepted as true, as the jury may have done, would be a circumstance tending to show that at the very time of appellee's injury he was serving as an employee on the company's time and not his own.

However, if the foregoing objection to the testimony can by any construction of the facts be considered to be without prejudice, the assignment of error to the action of the court in refusing appellant's requested instruction No. 2 must be sustained. The special instruction No. 2 referred to embodied a definition of the terms "in the course of employment" substantially as given in the court's main charge, and further that "you are further instructed in this connection that an injury is not sustained 'in the course of employment' if the employee at the time of receiving the injury is engaged on a mission of his own convenience and not in the furtherance of the affairs or business of the employer." The charge, we think, is substantially a negative presentation of the affirmative of the issue of appellee's cause of action as submitted in the court's main charge. In the case of Gammage v. Gamer Co. (Tex. Com. App.) 213 S. W. 930, it is said, quoting from the headnotes: "In a servant's action, where the court had affirmatively charged on his behalf that if the machine was defective and not in a safe condition, the master was liable, the refusal of a special charge, directing a verdict for the master unless the machine was in a defective condition, and unless the master had failed to use ordinary care with reference thereto, was error; the

master being entitled to have the affirmative of the issue presented."

The quotation embodies the rule that seems now to be well settled in this state. See cases cited in the opinion in that case and also the cases of Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517, and Tyler Ice Co. v. Tyler Water Co., 42 Tex. Civ. App. 210, 95 S. W. 649.

We cannot indulge the suggestion that the finding of the jury that appellee was "in the course of his employment" at the time and place of his injury necessarily negatives the converse of the issue, and hence that the refusal of the special charge was without prejudicial error. We attempted to give effect to such reasoning in the case of Northern Texas Traction Co. v. Woodall (Tex. Civ. App.) 294 S. W. 873, but on writ of error in the same case the reasoning was disapproved. See (Tex. Com. App.) 299 S. W. 220. To the same effect are the cases of Montrief & Montrief v. Bragg (Tex. Com. App.) 2 S.W.(2d) 276, and Dallas Ry. & Terminal Co. v. Garrison (Tex. Com. App.) 45 S.W.(2d) 183.

We conclude that for the errors shown the judgment must be reversed and the cause remanded.

### On Appellee's Motion for Rehearing.

■ Counsel for appellee present a very forceful and plausible argument to the effect that the special charge that we held should have been given is, in part at least, a general charge, and hence was properly refused. Some of the authorities cited seem to give force to that contention, such as Employers' Liability Assur. Corp. v. Light (Tex. Civ. App.) 275 S. W. 685; Humble Oil & Refining Co. v. McLean (Tex. Com. App.) 280 S. W. 557; Crawford v. El Paso Sash & Door Co. (Tex. Com. App.) 288 S. W. 169.

The respectful and insistent argument of counsel in behalf of appellee, we think, merits a more extended discussion of our view relating to the instruction attacked than was expressed in our original opinion holding that it should have been given as requested. The charge requested and now attacked in its entirety reads as follows:

"You are instructed that an injury is sustained 'in the course of employment,' as that term is elsewhere used in the charge submitted to you, when said injury has to do with and originates in the work of the employer and is received while engaged in or about the furtherance of the affairs or business of the employer, whether upon the employer's premises or elsewhere."

"You are further instructed in this connection that an injury is not sustained 'in the course of employment' if the employee at the time of receiving the injury is engaged on a mission of his own convenience and not in the furtherance of the affairs or business of the employer."

The first paragraph of the charge is in substantial accord with the charge relating to that subject submitted to the jury among other definitions along with special issues.

Appellant did not prepare and tender to the trial court and request the court to submit to the jury any special issues for a fact finding on the defense suggested in the second paragraph of the requested instruction, and appellee's contention is that the second paragraph of the charge is nothing more or less than a general charge instructing the jury as to the law arising on the facts, or one phase of the facts, and hence was properly refused.

Article 2189, Rev. Civ. Statutes, reads in part as follows: "In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

No objection is made to the first paragraph of the special charge; the contention relates alone to the second paragraph. It may be conceded that, viewing the second paragraph alone, disconnected with the first paragraph, the criticisms made are well taken, but we think the two paragraphs are to be considered together as a whole and as a definition with an appropriate explanation, and, when so considered, are easily understood and calculated to enlighten the jury. The first paragraph in an affirmative form defines when an employee is "in the course of his employment." It seems to us that in the same connection it cannot be erroneous to give the converse, the negative of the proposition. We think the jury, with both the affirmative and negative instructions before them, will be the better able to correctly determine the vital question of whether at the very time of appellee's injury he was engaged "in the course of his employment." Logically, it requires both the negative and the affirmative to make the definition complete. It is not universally true that language in a general form announcing a proposition of law added to a definition of terms is erroneous. A familiar illustration of this is to be found in an approved definition of "proximate cause." Such definitions uniformly end in, "there may be more than one proximate cause." As will be seen by reference thereto, the statute quoted specifically requires the court in giving special issues to submit such *explanations* as well as such definitions as shall be necessary to "enable the jury to properly pass upon and render a verdict on such issues." The statute has not designated just what "explanations" shall be given, but it evidently indicates that they shall be such as will be helpful to the jury. As said in the case of Robertson &

Mueller v. Holden, 1 S.W.(2d) 570, by Justice Speer of section B of the Commission of Appeals:

"In the nature of things, the statute has not attempted to declare what 'legal terms' shall be explained or defined further than 'shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.' Reasonable necessity, considering the term or terms used, then, should be the test. Ordinary words of simple meaning, of course, need not be defined. But those terms which in law have a distinct fixed meaning which an ordinary person would not readily understand should, upon proper request, be defined. This is recognized in the universal practice in negligence cases of the giving of a definition of such terms as 'ordinary care,' 'negligence,' 'proximate cause,' 'unavoidable accident,' and the like."

In the same case, quoting from the headnotes, it is said: "In action for injuries tried on special issues, in which court defined term 'proximate cause,' failure of court on specific objection of defendant to omission of definition of 'new independent cause' to define such term was error requiring reversal."

It will be seen by reference to the evidence detailed in our original opinion that the closely contested issue in the case was whether at the time of appellee's accident he was engaged in the course of his employment, and we can but think it well within the approved rules relating to the subject for the court in a definition which explains when an employee may be said to be working in the course of his employment to in the same connection explain when such employee will not be working in the course of his employment.

■ The further contention in behalf of appellee that the benefit sought by the special instruction is not available because appellant requested no special issue for a fact finding by the jury is answered by the decision of Robertson & Mueller v. Holden, already cited. It is there said:

"It is the right of a party, upon properly presenting the matter, to have proper definitions and explanations of terms given. Hines v. Hodges (Tex. Civ. App.) 238 S. W. 349, writ refused; Davis v. Pettitt (Tex. Com. App.) 258 S. W. 1046; Northern Texas, etc., Co. v. Jenkins (Tex. Civ. App.) 266 S. W. 175; Owens v. Navarro, etc., District, 115 Tex. 263, 280 S. W. 532.

"The Court of Civil Appeals does not question the propriety or even the necessity of proper definitions, but it puts its decision upon the ground that the matter was not properly presented; that the defendants should have submitted to the court a specially requested charge curing the omission, for which holding they cite a number of Court of Civil Appeals decisions which seem to support it. But the later holding of the Supreme Court in Gulf, etc., Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183, undoubtedly establishes a contrary rule. It makes a distinction that is worthy of notice, and explains perhaps the refusal of writs in some of the cases by the Courts of Civil Appeals apparently sustaining the Court of Civil Appeals in this case. That distinction is with respect to the correlative effect of articles 1971 and 1985 of our statutes (Vernon's Sayles' Ann. Civ. St. 1914). The Supreme Court says:

" 'These two statutes were enacted to accomplish the same purpose, and we think a failure to submit any *particular issue* under either statute can be reviewed on appeal only where the record shows a special charge was tendered on that issue.

"But in the instance of a defective or erroneous charge on a subject or issue which the court has undertaken to charge upon, the objections required by article 1971 take the place of special charges, and render it unnecessary that the latter be tendered. It is immaterial whether the matter objected to in the court's charge is a mere defective or incomplete statement of the law or issue to be determined, or is affirmatively erroneous; objections which sufficiently specify the error will preserve the point on appeal, without the necessity of again directing the court's attention to the same subject by special charge.' (Italics ours.)

"It is thus the rule that, whether the defect in the court's charge be an affirmative error or mere omission, a proper objection pointing out the defect is a sufficient predicate for reversal. This is obviously sound reasoning, for, if the objection to the charge itself specifically points out the defect, there is no need of a second complaint based upon the refusal of a requested charge presenting the identical matter. It is a most common sense interpretation of the statutes."

Without further discussion, we conclude that the motion for rehearing should be overruled.