**WEST TEXAS COACHES, Inc., v. MADI et al. (No. 531.)**

Court of Civil Appeals of Texas. Eastland. Feb. 8, 1929.

Rehearing Denied March 22, 1929.

gence of the appellant. The appellant answered by general demurrer, general denial, and pleaded specially the contributory negligence of the deceased and the driver of the car, Sam Madi, and that the collision between the appellant's coach and the car in which the deceased was riding was an unavoidable accident. The case was tried before the court and jury and submitted upon special issues. Upon the findings of the jury to the issues submitted, the district court rendered judgment in favor of appellee Masota Madi for $4,000, and in favor of the appellee minors, Abraham, Meida, and Joseph, in the sum of $2,000 each, with interest and costs. The court overruled appellant's motion for a new trial, and this appeal followed. Other facts material to the disposition of the case will be set out further on in the opinion.

There are 28 assignments of error in the record and 27 propositions of law thereunder. By reason of alleged errors of omission and commission the court's charge is assailed in nearly all of its different phases. It will be set forth in full, that its parts may be considered in their relation to each other.

"Gentlemen of the jury:

"You are the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given to their testimony; but you are not the judges of the law, and by this instruction you will be guided in making your answers to the special issues which are submitted to you in this cause:

"For your guidance in answering the special issues which are submitted you are further instructed as follows:

" 'Negligence' is the doing of that which an ordinarily prudent person would not have done under the same or similar circumstances, or the failure to do that which such a person would have done under like circumstances.

"You are instructed that the term 'proximate cause,' as that term is used in this charge, means the moving and efficient cause, without which the injury in question would not have happened; an act or omission becomes the proximate cause of an injury whenever such injury is the natural and probable consequence of the act or omission in question, and one that ought to have been foreseen by a person of ordinary care and prudence in the light of the attending circumstances.

"It need not be the sole cause, but it must be a concurring cause, which contributed to the production of the result in question, and but for which the said result would not have occurred.

" 'Ordinary care' is that degree of care which an ordinarily prudent person would have exercised under the same or similar circumstances.

"Special Issue No. 1.—Under all the facts and circumstances in this case, and under the

Harry P. Lawther, of Dallas, R. K. Hanger, of Fort Worth, and Bouldin & Zivley, of Mineral Wells, for appellant.

W. O. Gross, of Mineral Wells, and W. E. Allen, of Fort Worth, for appellees.

LESLIE, J. The appellees, plaintiffs below, filed this suit in the district court of Palo Pinto county for damages on account of the death of John Madi, husband of Masota Madi and father of the minor appellees, alleged to have been proximately caused by the negli-

conditions existing at the time of the collision in question, was the operator or driver of the West Texas Coaches, known as 'Miss Clyde,' negligent in passing or attempting to pass, if he did either, a truck on the Bankhead Highway at the rate of speed at which said coach was being operated? Answer Yes or No, just as you find.

"Special Issue No. 2.—If special issue No. 1 is answered in the affirmative, then was the negligence of the driver of said bus at said time and place a proximate cause of the collision and death of John Madi? Answer Yes or No, just as you find.

"Special Issue No. 3.—At the time and place of the collision in question, was the operator or driver of the defendant's coach, which collided with the Chevrolet car, in which John Madi was riding, operating said coach at a greater rate of speed than 15 miles per hour? Answer Yes or No, just as you find.

"Special Issue No. 4.—If special issue No. 3 is answered in the affirmative, then was the rate of speed at which the defendant's coach was being operated at said time and place a proximate cause of the collision, if any, and the death of John Madi? Answer Yes or No, just as you find.

"Special Issue No. 5.—Under all the facts and circumstances in this case at the time and place of the collision in question, did the operator of the said West Texas coach operate and drive said coach, if he did do so, at such rate of speed as to endanger the life of persons who were then and there on the Bankhead Highway? Answer Yes or No, just as you find.

"Special Issue No. 6.—If special issue No. 5 is answered in the affirmative, then was the rate of speed at which the coach was being operated at the time and place of the collision a proximate cause of the death of John Madi? Answer Yes or No, just as you find.

"Special Issue No. 7.—What amount of damages, if any, do you find that the plaintiff Mrs. Masota Madi, as the wife and beneficiary of John Madi, deceased, has sustained by reason of the death of the said John Madi? Answer the sum you find, if anything.

"In arriving at and determining your answer to this question, or to special issue No. 7, you will take into consideration and allow her whatever sum of money as, if paid now, would represent the fair value of what the plaintiff Mrs. Matsota Madi had a reasonable right to expect under the circumstances to receive from the earnings of her said husband. In determining the amount, if any, you will allow her, you may consider the earnings apparently, if any, of her said husband, at the time of his death, his age, and the condition of his health. In this connection, however, you are instructed that, in arriving at and allowing damages, if any, to Mrs. Masota Madi, the plaintiff, you must not take into consideration nor allow her any sum as compensation for her bereavement, mental anguish, or pain suffered by her by reason of the death of her said husband, but you can allow her any such damages, if any, as resulted in a pecuniary loss to her occasioned by his death.

"Special Issue No. 8.—In what amount, if any, do you find that the minor plaintiffs, Abraham Madi, Meida Madi, and Joseph Madi, as the children of John Madi, deceased, if you find they are his children, have each sustained damages, if any, by reason of the death of the said John Madi? Answer in the sum you find, if anything, for each individual plaintiff named.

"In arriving at and determining your answers to the foregoing question, you will take into consideration and allow them and each of them whatever sum of money as if, paid now, would represent the fair and reasonable value of what the deceased, John Madi, would probably have contributed to their support, education, and maintenance during the minority of each of them. In determining the amount, if any, you may consider the earnings of the said John Madi at the time of his death, his age, and the condition of his health, as well as the value, if any, from a pecuniary standpoint only, of his care and advice. In this connection, however, you are instructed that, in arriving at and allowing damages, if any, to each of said plaintiffs, you must not take into consideration nor allow them, or either of them, any sum whatever as compensation for bereavement, mental anguish, or pain suffered by reason of the death of John Madi, but you can allow to them, and to each of them, only such damages, if any, as resulted in a pecuniary loss occasioned by the death of John Madi.

"An unavoidable accident is an event happening suddenly and unexpectedly without the foresight or knowledge of a person and without fault or negligence on the part of anyone which caused the injury or damage.

"Special Issue No. 9.—Was the collision of the bus and Chevrolet car, at the time and place in question, an unavoidable accident as that term has been defined to you in the preceding paragraph of this charge? Answer Yes or No, just as you find.

"The burden of proof is upon plaintiffs to establish by a preponderance of the evidence affirmative answers to special issues 1 to 6 inclusive, and the amount, if any, in answer to questions 7 and 8, and upon the defendant to establish affirmative answer to special issue No. 9.

"J. B. Keith, District Judge."

The first and third assignments are addressed to the alleged errors of the court in its definitions respectively of "negligence" and "ordinary care." The objection is that said definitions are erroneous, in that the court in defining such terms used the phrase "ordinarily prudent person," whereas a cor-

rect definition of said terms would contain the phrase "ordinary prudent person." We are cited to no authority condemning the definitions given by the trial court upon the grounds here complained of, nor have we been able to find such authority. We hold the expression used by the court in its charge to be correct, legally and grammatically, and think such conclusion supported by the authorities, some of which are: Manufacturing Co. v. Bradley, 52 Tex. 599; Cameron Compress Co. v. Whitington (Tex. Com. App.) 280 S. W. 527; Wichita Valley Ry. Co. v. Meyers (Tex. Civ. App.) 248 S. W. 444; St. L. & S. F. Ry. Co. v. Franklin, 58 Tex. Civ. App. 41, 123 S. W. 1150 (writ denied); G., H. & S. A. Ry. Co. v. Simon (Tex. Civ. App.) 54 S. W. 309; San Antonio Gas Co. v. Robertson (Tex. Civ. App.) 55 S. W. 347; 44 C. J. p. 628, note 22.

Assignments 1 and 3 are overruled.

■ By the second and eleventh assignments, respectively, the appellant complains that the court's definition of "proximate cause" was erroneous, in that an essential part, to wit, "unbroken by any new and independent cause," was omitted therefrom, and that the court erroneously refused to submit its special charge No. 1, designed to cure such error, its special charge being: "You are instructed that by the term 'proximate cause,' as used in this charge, is meant such a cause as in a natural and continuous sequence, unbroken by any new and independent cause, produces an event without which the event would not have occurred, and which event could not have been foreseen under all the attending circumstances."

The appellant's contention is that the court's definition of "proximate cause" omitted the element suggested by its special charge, and is incorrect as an elementary proposition, and, further, that it is the right of a party correctly presenting a matter to have proper definitions, and explanations of terms given. In support of the last contention the following authorities are cited: Robertson & Mueller v. Holden (Tex. Com. App.) 1 S. W.(2d) 570; Hines v. Hodges (Tex. Civ. App.) 238 S. W. 349 (writ refused); Davis v. Pettitt (Tex. Com. App.) 258 S. W. 1046; North Texas, etc., Co. v. Jenkins (Tex. Civ. App.) 266 S. W. 175; Owens v. Navarro, etc., District, 115 Tex. 263, 280 S. W. 532.

These authorities are upon the right of a party to have legal or technical terms used in a charge properly defined. In the opinion first cited the trial court had used the expression "new independent cause," and the trial court declined to define the expression, though the defendants requested the court to do so. Clearly that was error on the part of the trial court, as may be seen from reading each of the authorities cited. No such expression or term is to be found in the court's charge in the instant case, and the authority would have no bearing here.

Returning to the first phase of the objection urged against the court's definition of "proximate cause," we are of the opinion that it lacks nothing of the element suggested by the expression "continuous sequence *unbroken by any new and independant cause.*" The charge as given certainly embodies the thought insisted upon by appellant. It would appear to be embodied therein more than once. It is to be found in that portion of the charge which states that an act or omission becomes the proximate cause of an injury whenever such injury is the natural consequence of the act or omission in question, and one that ought to have been foreseen by a person of ordinary care under the attending circumstances. As stated by Judge Gaines in T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162:

"The fact of the intervention of an independent agency, it occurs to us, bears more directly upon the question whether the injury ought, under all the circumstances, to have been foreseen; and, where this latter fact appears, we think that the original negligent act ought to be deemed actionable. In Seale v. Railway Co., 65 Tex. 274 [57 Am. Rep. 602], Chief Justice Willie says: 'If the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrongdoer, the current of authority seems to be that the connection is not broken.' It follows that, in our opinion, the question of probable cause ought to depend upon the further question whether a reasonably prudent man, in view of all the facts, would have anticipated the result—not necessarily the precise actual injury, but some like injury, produced by similar intervening agencies."

We believe that the authority from which this quotation is taken, as well as the Seale Case referred to, sufficiently establishes that the trial court's definition of proximate cause contains all essential elements of that term. The following authorities are also to the same effect: Payne v. Robey (Tex. Com. App.) 257 S. W. 873; Hubb Diggs Co. v. Bell (Tex. Civ. App.) 297 S. W. 682; Bleich & Co. v. Emmett (Tex. Civ. App.) 295 S. W. 223; T. & P. Ry. Co. v. Guidry (Tex. Civ. App.) 9 S.W.(2d) 284.

These assignments are overruled.

■ Assignments 4, 5, and 6 complain that the court erred in submitting issues 1 and 2, in that issue No. 1 was indefinite and uncertain; that there was no issue as to the rate of speed at which the bus passed the truck, the evidence relating thereto being uncontroverted; and for the reason that issue No. 1 assumes that the collision occurred when appellant's bus was passing the truck, whereas such phase was a controverted matter.

We do not think the issue indefinite and uncertain.

■ We do not construe the issue to be a submission of the rate of speed of the bus,

nor do we think the issue assumes that the collision occurred while the bus was passing the truck. These objections will be considered together and in the light of the testimony raising the issue. The issue was merely an inquiry as to whether the "bus driver was negligent in passing or attempting to pass the truck, if he did either," at the rate of speed the bus was going. It does not even assume that the bus passed the truck, or that it attempted to do so, but asked the jury "if he [the driver] did either," and, if so, was such act on the occasion of the collision negligence on his part. So far as the issue is concerned, the bus may have completely passed the truck before the collision occurred. The issue was designed to determine the negligence, if any, on the part of the driver, in passing or attempting to pass the truck as he did on the *occasion of the collision.* This collision took place near a bridge or culvert, where the road was railed in on both sides for a considerable distance. A merchant's fast motor truck was approaching the bridge at about 15 miles per hour. It was of large dimensions and, considering the attached trailer a part thereof, it was 50 or 60 feet in length. The motorbus was also large, traveling in the same direction as the truck, and approaching it and the bridge at about 30 or 35 miles an hour. The Chevrolet car in which the deceased, John Madi, was riding was likewise approaching the truck and bridge from the west. The driver of the bus observed from a considerable distance the Chevrolet car approaching at about the same rate he himself was traveling. The driver of appellant's bus, observing the approaching Chevrolet car, "pulled down his speed," so as to stop behind the truck, but immediately, deeming it possible to pass the truck, he sped out from behind the same, and according to one portion of his testimony (corroborated by other testimony) passed around it at the rate of about 35 miles per hour. In another portion of his testimony he states:

"About the time I pulled around the truck, this Chevrolet at that time was just about at the concrete bridge; all at once he began skidding and got nearly across the road; his car kinder whipped back in toward the rail on his side and hit it, and threw his car crossways over on the north side. I pulled off the pavement as close to the rail on the north side as I could get. * * * I pulled around and was pulling around the front of the truck in the rails when I first noticed a Chevrolet begin skidding. * * * I had not come to a complete stop when the injury occurred, because the road was slick, and it would have been hard to come to a complete stop in a distance there of some 50 feet. * * *"

Another of the appellant's witnesses, Ownby, the driver of the truck, testified:

"This car began skidding. I had a mirror on the truck, and when the car began skidding I glanced in this mirror, and saw this bus up here by the side of my truck. * * * I was attracted by the Chevrolet skidding. At that time it was just about crossing that concrete culvert, and it began to skid and of course that attracted my attention, to see what was the trouble, and I looked up in my little mirror; that is what I carry on my truck to see what is behind me. When the Chevrolet began to skid I looked and seen the bus was behind me. The bus was right by the side of me and at that time the Chevrolet was beyond the little bridge, it was between me and the bridge, which would throw it east of the bridge."

The witness Proctor, offered by appellees, and who was riding as a passenger in the bus, testified that the bus and Chevrolet car were approaching each other at about 35 miles an hour; that:

"The bus was in the center of the road. * * * and as the bus approached the truck he [appellant's driver] swerved to the right and as he came directly up behind the bus he pulled out to the left of the truck and increased his speed. As he approached the rear of the truck he speeded up and swerved back to the left and started by the truck. I glanced up and saw the Chevrolet approaching. There wasn't room for the bus to get between the Chevrolet and the truck and when the front of the bus was about the middle of the truck the Chevrolet began to weave in the road. The Chevrolet was traveling on the left hand side of the road, that was to its right and to my left side of the road, and about the time the front of the bus was just passing the center of the truck the Chevrolet began to weave slightly and skidded into the guard rail on his right and when he hit it it threw the Chevrolet out in the center of the road. The rear of the Chevrolet was probably a few inches beyond the center. The front wheels were about the south edge of the pavement, and almost as soon as the Chevrolet had stopped after the impact had thrown it out * * * the bus hit it, * * * and the impact knocked the Chevrolet back some 75 feet. * * * The bus turned to the right and went over an embankment and took out two or three guard rails."

The testimony referred to, as well as other testimony of the same nature, pro and con, sufficiently portrays the circumstances attending the collision of the two approaching vehicles upon the occasion in question. The bus was large and heavy, speeding past the truck at some 30 or 35 miles an hour. Its momentum was that derived from such a speed, and this, together with the other circumstances, sheds some light upon the driver's apparent inability to stop the bus on a *wet and slippery pavement,* and possibly pre-

vent the collision, as well as the passing of the bus through the guard rails and over the embankment. Evidently the speed at which the bus passed the truck was one of the circumstances which the jury had a right to consider. It cannot be said to be an uncontroverted fact that the rate of speed at which the bus passed the truck had nothing to do with the collision. It was an element, along with numerous other circumstances, entering into this tragedy of the highway and entitled to be considered by the jury. The speed of the coach and the circumstances tending to create a perilous situation confronting the driver of the Chevrolet car, prompting him to escape danger by the application of his brakes and the directing of his car to the rail on his side of the road, together with the consequent and quite natural skidding of his car on the wet and slippery pavement, were all for the jury's consideration in determining the proximate cause of John Madi's death. The issues are not subject to the criticism made, and the assignments are overruled.

Further, we do not interpret the issue as submitted one upon which there was no conflict in the testimony, but this phase will be considered in disposing of the objections to issue No. 3.

■ By propositions under assignments 7 and 8 the appellant contends that there was no controversy about the speed of the bus at the time of the collision being greater than 15 miles per hour, and therefore that issue No. 3, being unwarranted by the law or testimony, and the collision not being due to the rate of speed at which the bus was going, the court erred in submitting such uncontroverted issue to the jury. We do not believe the record supports the contention that the coach's rate of speed at the time and place of the collision was an uncontroverted issue. Jim Coke, an important witness offered by the appellant, and who was driving the coach at the time of the collision, testified in part:

"When I saw the Chevrolet begin to skid, I applied my brakes and pulled over as far as possible against the rail. * * * I had not come to a complete stop when the impact occurred, because the road was slick and it would have been hard to come to a complete stop in a distance there of some fifty feet. * * * The road was slippery and I knew that at the time. * * * I was coming down hill on that brick pavement, very slight grade there, and I passed this truck at about 35 miles an hour. * * * When I came up to the truck I pulled my speed down to 20 or 25."

■ By reason of this testimony and other circumstances in the record, we overrule the contention that the testimony was uncontradicted that at the time of the collision the rate of speed of the bus was greater than 15

miles an hour. Further, it has been held that, though an issue is established by the uncontroverted evidence, the submission thereof in a special issue to the jury is not reversible error, unless it appears probable, as shown by the record, that the same was prejudicial to the complaining party. Pacific Express Co. v. Rudman (Tex. Civ. App.) 145 S. W. 268 (writ refused); Rhoades v. Pointer (Tex. Civ. App.) 243 S. W. 583; T. & P. Ry. Co. v. McCoy, 90 Tex. 264, 38 S. W. 36; G., C. & S. F. Ry. Co. v. Rowland, 90 Tex. 365, 38 S. W. 756; Parks v. San Antonio Traction Co., 100 Tex. 222, 94 S. W. 331, 98 S. W. 1100.

If, as contended by appellant, there was no controversy about its coach's rate of speed being greater than 15 miles per hour at the time of the collision, then the jury's confirmation of that fact by an affirmative answer to the issue submitted would not prejudice the appellant. From this record it does not appear probable that the complaining party was prejudiced or injured by the submission of the issue, if it be admitted the testimony was uncontroverted. Rule 62a.

Article 794 of the Penal Code of 1925 provides that: "All operators of motor vehicles in passing each other on the public highways shall slow down their speed to fifteen miles per hour. Any person who violates this article shall be fined not to exceed $100."

■ Conceding the facts to be that at the time of the collision the appellant's coach was proceeding at a speed in excess of 15 miles per hour, that would clearly make against the appellant a case of negligence per se under the above article, and nothing would remain for the jury to pass upon, except the determination of whether such speed at such time and place proximately caused the death of John Madi. Exceeding the statutory rate of speed upon the highway is unquestionably negligence per se. Moss v. Koetter (Tex. Civ. App.) 249 S. W. 259; Carvel v. Kusel (Tex. Civ. App.) 205 S. W. 941; Flores v. Garcia (Tex. Civ. App.) 226 S. W. 743.

There is nothing vague or uncertain about this statute, and by its provisions it is negligence per se for the operator of a motor vehicle to pass an approaching one at a rate of speed in excess of 15 miles per hour. Upon the preceding issues the jury has found against the appellant, and we do not believe the complaint urged against their submission well founded.

By propositions under assignments 9 and 10 appellant attacks the action of the trial court in its submission of special issues 5 and 6. Under these propositions it is asserted (1) that issue No. 5 is vague and uncertain, and the finding of the jury thereon necessarily speculative and conjectural; (2) that the speed of the appellant's bus was not an issue or the proximate cause of the collision; and (3) that no such issue was in the case,

The issue is based upon a state of facts condemned as a penal offense by article 790, P. C. 1925. That article provides: "No person operating or driving a motor or other vehicle upon the public highways shall pass any motor or other vehicle, person or thing on any public highway of this state at such rate of speed as to endanger the life or limb of any person or the safety of any property. Any person violating any provision of this article shall be fined not less than five nor more than two hundred dollars."

■ We are of the opinion that this article of the statute is not vague, indefinite, or uncertain. Its provisions are not only clear and enforceable, but its purpose wise. However, if, as a penal statute, it is in any respect susceptible to the criticism here urged against it, nevertheless the article is "at least sufficient as a remedial statute imposing a civil duty, so as to render its violation negligence per se," as stated in Solan & Billings v. Pasche (Tex. Civ. App.) 153 S. W. 672 (writ refused).

Appellant cites us to no authority condemning said article for the reasons urged, nor have we been able to find any. This statute has several times been discussed and quoted without criticism in the opinions of our courts. Darden v. Denison (Tex. Civ. App.) 3 S.W.(2d) 137; South Plains Coaches v. Behringer (Tex. Civ. App.) 4 S.W.(2d) 1003; Radford Gro. Co. v. Andrews (Tex. Civ. App.) 5 S.W.(2d) 1010.

■ Under the rule prescribed by the above statute it was for the jury to judge, from all the evidence and circumstances attending the collision, whether appellant's vehicle was operated upon the public highway at such a rate of speed as to endanger life. The circumstances of that occasion have been sufficiently detailed, and the jury have found that a human life was lost as a direct and proximate result of the rate of speed at which the coach was then being driven. We approve the issues as submitted.

■ We overrule the appellant's contention that the submission of issue No. 3 amounted to an instruction to the jury to answer the succeeding issue No. 5 in the affirmative. These issues were based upon articles 794 and 790, P. C., respectively. Each of these provisions covers a separate state of facts, the doing of which is denounced as a penal offense, and therefore negligence per se. When issues are presented, based upon such separate states of fact, the plaintiff is entitled to have the issues arising submitted to and answered by the jury, who, in answering special issues, are not concerned with the legal effect of such answers, and there is no presumption that the jury, in considering issue No. 3, drew any inferences influencing them in giving an answer to issue No. 5. The two articles of the Code simply cover separate and distinct states of fact.

Propositions and assignments 9 and 10 are overruled.

■ Appellant's assignments 12 to 22, both inclusive, and the numerous propositions thereunder, complain of the court's rulings in various respects, amounting to a rejection of the appellant's theory that Sam Madi, the driver of the Chevrolet car, and John Madi (injured while riding in the back seat thereof) were engaged in a joint enterprise at the time of the collision which resulted in the death of the latter. If they were such joint enterprisers, the negligence, if any, of said driver, would be imputable to the deceased, and would bar recovery by appellees in the instant case.

The appellant sought in various ways to bring this phase of the case before the jury. An effort was made to have the court define "joint enterprise" and "contributory negligence," as well as to obtain the submission of an issue as to whether the Chevrolet car was in the joint possession or under joint control of the deceased and the driver at the time of the collision, etc. The court refused to give such definitions and charges, as well as the various issues designated to defeat recovery upon the grounds of imputed negligence of the driver.

The court gave no charge involving contributory negligence on the part of the deceased. The appellant requested none, and there is no evidence in the record raising such issue.

As stated by the appellee, the various issues and matters complained of in the group of assignments under consideration become material only in event the pleadings and evidence in the case present a proposition of joint enterprise, joint possession, or joint control upon the part of the deceased and Sam Madi in the direction and control and operation of the vehicle in which they were riding.

As we interpret the defendant's first amended original answer, it charges with more or less emphasis that the driver, Sam Madi, was under the control and direction of the deceased, John Madi, and that the said driver was the servant and agent of the deceased at the time of the collision. The evidence does not support this theory, and since the court presented no such theory to the jury, and the appellant requested no charge on that proposition, this theory may be dismissed without further consideration.

The solution of the various problems arising from applying the principle of imputed negligence to joint enterprisers will in the main dispose of the group of assignments under consideration. Much has been written upon this subject, and the rule has been stated substantially the same by the standard authorities and in the leading opinions. Our Supreme Court, in G., H. & S. A. Ry. Co. v. Kutac, 72 Tex. 643, 11 S. W. 127, states it thus: "Applied to private carriers, the rule

is said to be that, if the relation of joint enterprise or of master and servant exists, then the negligence of one joint enterpriser or servant is imputable to the other joint enterpriser or to the master; but a mere guest, as in this case, is not a master or joint enterpriser, nor can the negligence of the host or his servants be imputed to the guest" (citing Gray v. Ry. Co., 22 Am. & Eng. R. Cases, 335).

As more applicable to the concrete facts of this case, the rule is stated in 45 C. J. p. 1031, § 588: "Where an occupant of a conveyance is engaged in a common or joint enterprise with the operator and has an equal right to direct and control the operation of the vehicle, the contributory negligence of the operator is imputable to the occupant. To constitute occupants of a conveyance joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance. A mere guest or gratuitous passenger, riding with the operator of a conveyance by invitation, is not engaged in a common or joint enterprise with the operator; and this is so, notwithstanding the guest asks to be driven to a certain place, or both parties have certain plans in common."

Numerous Texas authorities are cited by the last authority as supporting the rule stated. Others to the same effect: Hines v. Welch (Tex. Civ. App.) 229 S. W. 681; West v. Bruns (Tex. Civ. App.) 294 S. W. 235; Eastern Texas Electric Co. v. Smith (Tex. Civ. App.) 298 S. W. 314; Central Texas & N. W. Railway Co. v. Gibson (Tex. Civ. App.) 83 S. W. 862; Id., 99 Tex. 98, 87 S. W. 814.

The rule has been sufficiently indicated, and it remains to make a proper application of the same to the facts of this case, or rather to determine whether or not the trial court made such application. In the first place, this court is of the opinion that the appellant's pleadings are insufficient to raise the question of joint enterprisers, as applied to the deceased and the driver, Sam Madi; but, if we be mistaken in this view, we are of the further opinion that the testimony, considered in its most favorable light to the appellant, raised no such issue.

In brief, the testimony discloses that Sam Madi, who had been reared in Utica, N. Y., but who for several years had been a merchant in Africa, returned to his old home en route to Reedly, Cal., for the purpose of marrying Freda Sheehan, "an old sweetheart" of his, who was to return with him to his home in Africa. The Madi family, of whom Sam was one, resided in Utica, and at that place he purchased a Chevrolet automobile in which to proceed on his journey to California. Upon his invitation, his father, Louis Madi, and his brother, John, accompanied him to the wedding. Immediately after the wedding the Madis, accompanied by the bride, began the return trip to Utica. The bride's uncle, Peter Sheehan, and cousin, Bedelia Sheehan, who had previously gone to California, concluded to return to Utica, N. Y., and they accompanied the party back en route to that place in a Ford car belonging to Peter Sheehan, who bore the expenses incident to the return of himself and Bedelia. Sam Madi apparently bore the expenses incident to traveling in the Chevrolet. The party proceeded on the return trip to a point about 2½ miles east of Mineral Wells, where a collision occurred between appellant's coach and the Chevrolet car being driven by Sam Madi. John Madi, who at times relieved Sam at the wheel and was riding in the rear seat of the Chevrolet car at the time of the collision, lost his life on this occasion. He was a man sound in body and of normal mentality.

This, in brief, indicates the general facts and circumstances leading up to the death of John Madi. We have carefully reviewed the testimony as a whole, and we do not believe that it establishes in legal contemplation a joint enterprise upon the part of John Madi and Sam Madi; but we are of the opinion that it was Sam Madi's enterprise, and that all the circumstances exclude the idea that either Sam or those charged by the appellant to have been jointly interested therein ever had the remotest idea that the enterprise was one of a joint nature, in the sense that the appellant contends, or in any other sense. It appears to have been a simple matrimonial venture, in which Sam Madi purchased a Chevrolet car and invited his father and brother to accompany him as guests on that occasion. They accepted the invitation and went in that capacity. All had a common destination in returning to Utica, N. Y., but there is no evidence that John Madi had an equal right, or any right, to direct and control the conduct of Sam Madi in the operation of the Chevrolet car, owned exclusively by the latter and driven by him at the time of the wreck. John Madi, as such guest or gratuitous passenger, was without the right or authority to direct and control the operation of the vehicle in which he was riding when he lost his life. In the absence of these elements, there was, under the circumstances and under the rule of law stated, no joint enterprise between Sam and John Madi, which would warrant imputing the negligence, if any, of the latter to the former. So interpreting the record, we do not believe that the court committed any error in the respects complained of by the group of assignments and propositions under consideration. They are overruled.

There is another phase to assignments 15 and 16, 17 and 18, and 19 and 20. The first two pertain to the refusal of the

court to submit appellant's special issues 3 and 4; the second two pertain to the court's refusal to submit special issues 5 and 6; and the third to the refusal to submit special issues 8 and 9. The propositions under these assignments will be further noticed. Each of the above rejected issues sought from different angles a finding by the jury that the negligence of Sam Madi, the driver, was the proximate cause of the death of John Madi. Granting there was concurrent negligence on the part of Sam Madi and the appellant's driver, that fact would not exonerate either from the natural consequences of such negligence. They would be joint tort-feasors, and, if both be negligent, both would be liable for injuries proximately resulting. West v. Bruns (Tex. Civ. App.) 294 S. W. 235, Zucht v. Brooks (Tex. Civ. App.) 216 S. W. 684. Hence the special issues tendered, and by the court rejected, become immaterial, and it may be said that the court's general charge and issues covered the same matter, if material.

Further, the appellant did not plead that the negligence of Sam Madi was the *sole* proximate cause of the death of John Madi, nor was the submission of such an issue requested. That element is not in the case. The above groups of issues requested and refused.

Assignments 23, 24, 25, 26, and 27 challenge the sufficiency of the testimony to support the findings of the jury in answer to issues 1, 2, 4, 5, 6, and 9, and by assignment 28 it is contended that the answer to special issue No. 9 is *contrary to the uncontradicted testimony*. These assignments are all overruled. The testimony is abundantly sufficient to support each finding of the jury. This record discloses that the appellant's driver on the occasion of this collision was guilty of reckless and inexcusable negligence, resulting in the destruction of human life.

The litigants appear to have had a correct trial, the judgment is warranted, and ought to be affirmed. It is so ordered.

Court of Civil Appeals of Texas. Eastland. Feb. 8, 1929.

Rehearing Denied March 22, 1929.

Harry P. Lawther, of Dallas, R. K. Hanger, of Fort Worth, and Bouldin & Zivley, of Mineral Wells, for appellant.
W. O. Gross, of Mineral Wells, and W. E. Allen, of Fort Worth, for appellee.