## HICKS et al. v. BROWN et al.

### No. 5012.

Court of Civil Appeals of Texas. Amarillo.
May 1, 1939.

Rehearing Denied May 29, 1939.

886

Underwood, Johnson, Dooley & Wilson and Morgan, Culton, Morgan & Britain, all of Amarillo, for appellants.

L. B. Godwin and Works & Bassett, all of Amarillo, for appellees.

STOKES, Justice.

This is an action for damages filed by appellee, Edna Brown, a colored woman, against appellants, Emma Hicks, doing business under the trade name of Yellow Cab Company, and Hammond Taxi & Baggage Company, a private corporation, both of whom operate taxi cabs in the city of Amarillo. Appellee alleged that on the 8th of November, 1937, at about three o'clock A. M. she was a passenger in the Yellow taxi cab, traveling south on Harrison Street in Amarillo and that, as the cab reached the intersection of Third Avenue which crosses Harrison Street, one of the cabs of appellant, Hammond Taxi & Baggage Company, approached from the east and a collision between the two cabs ensued in which she received serious personal injuries.

The case was submitted to a jury upon special issues, and upon their findings of negligence on the part of the drivers of both taxi cabs, the court entered judgment in favor of appellee in the sum of $1000, making provision for contribution of each of appellants in the event the other was required to pay more than one-half of the judgment.

Motions for a new trial filed by appellants being overruled, they gave notice of appeal, which was duly perfected, and the case is now before us for review.

The appellant, Hammond Taxi & Baggage Company, will be designated as the Hammond Taxi Company, and appellant, Emma Hicks, will be designated as the Yellow Cab Company.

Under appropriate assignments of error and propositions of law the Hammond Taxi Company contends, substantially, first, that the evidence was not sufficient to warrant a judgment against it. Secondly, assigns error in the form of special issues submitting the issue of sole proximate cause. Thirdly, error in submitting the question of unavoidable accident. Fourthly, in giving undue emphasis in the charge to the rate of speed at which its cab was being driven. Fifthly, in refusal of the court to give definitions of the term "proper lookout" and "reasonably safe control." Sixthly, error in admitting alleged hearsay testimony and, seventhly, error in refusing, upon motion, to strike excerpts from a scientific treatise utilized in the cross examination of a professional witness.

Some of the complaints made by the Yellow Cab Company are the same as some of those made by the Hammond Taxi Company and, in addition thereto, it complains, 1st, of the refusal of the court to submit special issues requested by it relative to certain acts of the driver of the Hammond taxi; 2nd, of the submission of special issues concerning the rate of speed at which its own cab was being driven; 3rd, of the action of the court in limiting the question of reasonably safe control of the Hammond cab to the period immediately before and at the time it entered the intersection and, 4th, duplication and confusion in the charge of the definition of proximate cause.

The first contention made by the Hammond Taxi Company is not well taken. We do not deem it necessary to enter into an extended analysis of the testimony but, in our judgment, there was ample testimony to warrant the court in submitting the case to the jury. It is shown by the evidence that the Hammond taxi cab was proceeding west on Third Avenue. The driver admitted he was traveling at least twenty-five miles an hour. The driver of the Yellow cab testified the Hammond cab was traveling at about thirty-five miles per hour. It was shown that the lawful rate of speed on the street where the collision occurred was twenty miles per hour. The driver of the Hammond cab testified he did not see the Yellow cab until he was entering the intersection only a few feet from where the collision occurred. According to his own testimony the driver of the Hammond taxi

was guilty of negligence per se in driving at a rate of speed greater than was allowed by law. The fact that he did not see the Yellow cab until he entered the intersection, together with other evidence showing that after passing the corner of the buildings on Third Avenue, Harrison Street was open to view some distance north, plainly raised the question of whether or not he was maintaining a proper lookout at the time.

This testimony alone was sufficient to require the court to submit to the jury questions of negligence and proximate cause in relation to the manner in which the driver of the Hammond cab operated his car upon the occasion in question. There were other circumstances which also warranted the court in submitting the matter to the jury and, being of the opinion that no merit is shown in this contention, the first, second and third propositions of the Hammond Taxi Company will be overruled.

The second contention made by the Hammond Taxi Company is presented under its fourth proposition of law. It assigns error of the court in the submission of special issue No. 6 upon the question of sole proximate cause, contending that the court improperly placed the burden of proof upon it to show that the negligence of the Yellow cab was the sole proximate cause of the collision and appellee's injuries. Special issue No. 6 was as follows: "Do you find from the preponderance of the evidence that any act or acts or conduct upon the part of Joe New found by you in answering issues Nos. 1 to 5, inclusive, was the sole, proximate cause of the injury, if any, to the plaintiff?" Joe New was the driver of the Yellow cab and the special issue was answered in the negative. The contention here is that the question of whether or not the manner in which the Yellow cab was being operated and the acts and conduct of Joe New, its driver, constituted the sole proximate cause of appellee's injuries and that it was an element that had to be eliminated by appellee before she would be entitled to recover of the Hammond Taxi Company. It is argued, therefore, that the duty resting upon appellee to establish that the acts and conduct of the driver of the Yellow cab were not the sole proximate cause of the collision and resulting injury, the court should have submitted special issue No. 6 relating thereto in the negative so as to

place the burden of proof upon appellee, the plaintiff. The Hammond Taxi Company, by this contention, takes the position that the question of sole proximate cause partakes of the same nature as the question of unavoidable accident and is one which constitutes an element of defense that can be established by proof under a general denial. If there is any material substance in the contention so frequently made in the trial of such controversies that similar special issues should be so framed as carefully to place the burden of proof upon the plaintiff even though it involves the confusing form of what is sometimes termed a double negative, it would not apply in this case because of the manner in which the issue was injected into the case. The Hammond Taxi Company pleaded the acts and conduct of the driver of the Yellow cab in (a) failing to come to a stop at the stop sign located at the intersection of the two streets; (b) failing to yield to the traffic on west Third avenue; (c) failing to keep a proper lookout, and (d) in entering upon the intersection at a dangerous rate of speed under the circumstances. It pleaded further that, in selecting the Yellow cab as her means of conveyance and selecting her point of destination with which she alone was concerned, appellee acquired the privilege of directing the driver of the cab and that the cab, to all intents and purposes, was subject to her control and management. It alleged, further, that appellee knew the conditions existing at the intersection, the presence of the stop sign and the buildings located at the corners and that the negligence of the driver of the Yellow cab in the various acts of conduct were, therefore, imputable to her. It alleged that each of such acts, singly and collectively, constituted the sole or contributing proximate cause of the collision and injuries which resulted to her and that they constituted contributory negligence on her part.

It is always necessary for a defendant to plead and establish by proof acts and conduct on the part of plaintiff upon which the defendant relies to establish contributory negligence and thereby defend against the negligence charged against him. Galveston, Harrisburg & S. A. Ry. Co. v. Easton, Tex.Civ.App., 257 S.W. 924. Contributory negligence cannot be urged as a defense in the absence of allegations and where it is alleged and an issue is made upon it by the evidence, it

is always necessary for the court to submit special issues thereon. Appellant, Hammond Taxi Company, having alleged the acts and conduct of the driver of the Yellow cab to be negligence that was imputable to the plaintiff and therefore constituted contributory negligence which it alleged was the sole proximate cause of the collision and injury to plaintiff, it became the duty of the court to submit issues thereon in an affirmative manner, as was done, in order to determine appellant's affirmative contention in that respect. The form of special issues depend in a very large degree upon the nature of the pleadings and the testimony introduced. It is held in many cases by our courts that it is never necessary to duplicate special issues where opposite issues are involved. The rule applies to this contention of appellant under the assumption that such opposition in the issues was involved in this case. In other words, assuming that, ordinarily, appellant, Hammond Taxi Company, would be entitled to a negative issue upon the question of sole proximate cause, the issue here being based upon the identical acts and conduct that formed the basis of its contention that the contributory negligence of appellee was the sole proximate cause, the rule that, where an issue must be submitted in a positive manner, the same matter does not again have to be submitted in a negative manner would apply and it was not necessary for the court to submit the same issue twice. We do not find it necessary here to decide the question of whether or not appellant would have been entitled to have the issue submitted in the manner and form for which it contends in the absence of such pleading, that is, in such manner as to place the burden upon the appellee, plaintiff, of establishing the negative of the issue of sole proximate cause, because, under its own pleadings, the duty rested upon the court to submit the exact opposite and as the question was submitted in accordance with the pleading, the court was not required again to submit it in a negative form. Wright v. Traders & General Ins. Co., Tex.Com.App., 123 S.W.2d 314.

■ Under the third contention further complaint is made of the sixth special issue submitted by the court because it limited the acts and conduct of the driver of the Yellow cab to those included in the preceding five special issues in relation to the matter of sole proximate cause.

It contends that the special issue should not have been so limited but that it was entitled to a verdict if any act of the driver of the Yellow cab constituted the sole proximate cause of the collision whether such act was included in the five preceding special issues or not. The five issues covered every act of the driver of the Yellow cab that, under the evidence, could possibly have contributed in any manner to the collision. No other act than those included in those issues was alleged by any party to the suit, nor was any other such act shown by the testimony of any witness. We do not believe the court was required to submit such an issue carte blanche and give to the jury license to explore the realm of unknown possibilities. Appellant points us to no act that could have been considered by the jury as a basis of the sole proximate cause of the collision other than those included by the court in special issue No. 6 and, in our opinion, no error was committed in this respect.

The fourth contention made by appellant, Hammond Taxi Company, is substantially to the effect that the court erred in submitting the question of unavoidable accident and in defining that term to be an event which happened without any of the parties thereto being guilty of negligence in doing or permitting to be done or omitting to do the particular thing which caused such event. The contention is that, there being more than one defendant to the suit, the question should have been submitted separately and in two separate special issues. The argument is made in this regard that the collision of the automobiles which resulted in appellee's injuries could have been an unavoidable accident as to the Hammond Taxi Company and not an unavoidable accident as to the Yellow Cab Company, in which event the Hammond Taxi Company would be entitled to vindication because, as to it, the collision was the result of an unavoidable accident regardless of what it may have been as to the Yellow Cab Company.

■ There is little contrariety of verbiage and practically no variation of thought in the many definitions of the term "unavoidable accident" found in the opinions of our courts. A late iteration of the correct definition is found in Dallas Ry. & Ter. Co. et al. v. Price et ux., 114 S.W.2d 859, 860, wherein Justice Critz, speaking for the Supreme Court, said:

890

"An unavoidable accident 'is one which is not occasioned in any degree, either directly or remotely, by want of such care or prudence as the law holds every man bound to exercise; and if the accident complained of could have been prevented by either party by use of means suggested by common prudence, it is not unavoidable.' In other words, an 'unavoidable accident' is one which happens without being caused by the negligence of either party."

■ This definition comports with the definitions that have universally been accepted by the courts as far as we can ascertain. The question of unavoidable accident is entirely different in its nature from the questions of negligence and proximate cause. The latter involve the liability of the actors for the consequences of their conduct, whereas the principal element involved in the term "unavoidable accident" is fate, that is, the event is the result of the intervention of fatalistic elements and is one for which fate alone is responsible. It matters not, therefore, whether the event was brought about by the negligence of one of the actors or all of them, it cannot, in a legal sense, be an unavoidable accident as to any of them if the negligence of either of them is responsible for it.

We are cited by appellants to the case of Dallas Ry. & Term. Co. v. Boland, 53 S.W.2d 158, wherein the Waco Court of Civil Appeals holds that where there is no connection between two defendants and the plaintiff alleges entirely separate and distinct acts of negligence on the part of each, the issue of unavoidable accident should be separately submitted as to each defendant. A close analysis of the case will show that the holding does not depart from the established rules and interpretation in regard to the question of unavoidable accident. It will be observed in that case that the bus was not included in the special issue nor was it necessarily included in the definition given by the court. The special issue identified the collision as being one which occurred between McVey's automobile and the bicycle. None of the occupants of the bus, nor the bus driver, knew the collision had occurred nor that McVey's automobile struck the bus. A witness who was standing some half a block behind the bus when the incident occurred, stated that McVey's automobile did strike the bus. If the jury

had believed the automobile did not strike the bus, then, under the definition and the form of the special issue given by the court, the jury might easily have concluded that the collision would be an unavoidable accident even though it was caused by the negligent acts of the driver of the bus and that if the automobile did not strike it, then the bus was not "involved" in it.

In the course of the opinion the court observed that if, as a matter of fact, the injury was caused by the act of the driver of the bus in operating it without due regard for the safety of other people, the jury might well have decided as to the bus company the injury was not an unavoidable accident since the driver of the bus could have operated it so as to give due regard to other people.

Our interpretation of the Boland case is that it was not intended to make any change in the accepted definition of the term "unavoidable accident" nor to introduce any innovation in the established method of its submission to the jury.

■ Appellants contend that, when there are two or more defendants, the question of unavoidable accident should be submitted differently from what it should be when there is only one defendant because, they say, that all the courts hold the issue should be submitted as to each of the actors in the incident which caused the injury. In so far as the definition of the term is concerned we agree with appellants, but we cannot agree with them in the contention that the special issue should be submitted differently in cases of two or more defendants from what it should be in cases where there is only one defendant. The number of defendants in no respect changes the meaning nor the application of the term "unavoidable accident". The substance of the almost universal holdings of the courts is that an event or catastrophe is an "accident" when it occurs without negligence of anyone contributing to its occurrence. The term "unavoidable" does not add anything to its designation as an "accident" and it is likely that, if there is confusion in respect to the matter, it has arisen over the tendency to substitute the word "unavoidable" for the correct term "accident". Indeed, many courts and legal authors have used the term "accident" in a loose manner, applying it to every catastrophe whether it was the result of negligence and, therefore, not an accident at all, or

whether it was, in the true sense, an accident, that is, an unforeseen casualty or mishap for which no one is responsible.

The submission of the question of unavoidable accident in the manner in which appellant here contends it should have been submitted, that is, in separate special issues as to each of the defendants, would, in effect, be submitting twice the question of each defendant's negligence and giving each defendant two avenues or means of submitting his defense against a charge of negligence when, in all sound reasoning, he is entitled only to one. We say this because, to separate the matter of unavoidable accident and submit it as to one of the defendants would, in effect, be asking the jury whether or not the event occurred without the negligence of that particular defendant. Thus it would devolve into a question of the negligence of each of the defendants instead of the question of the entire event being an accident which occurred without being caused by the negligence of any party involved in the catastrophe.

Appellants insist that their contention in this respect is supported by the opinions in the cases of Dallas Ry. & Ter. Co. v. Brown, Tex.Civ.App., 97 S.W.2d 335; Dallas Ry. & Ter. Co. v. Redman, Tex.Civ.App., 113 S.W.2d 262, and the case of Dallas Ry. & Ter. Co. v. Price, supra. A close reading of those cases will reveal, we think, that none of them supports the contention. In them and many others are found statements to the effect that the question of unavoidable accident should be submitted as to all of the parties involved. By this it is not meant that separate special issues should be submitted as to each of the parties involved, but that, in submitting to the jury a definition of the term "unavoidable accident" each of the acting parties involved in the event should be included and likewise in submitting the special issue, all such parties involved in the incident or catastrophe which resulted in the injury should be included.

Some of the cases cited by appellants are cases in which all of the persons involved in the incident or catastrophe which caused the injury were not made parties to the suit (Dallas Ry. & Ter. Co. v. Redman, supra) and, in giving the definition of the term "unavoidable accident", the court evidently was of the opinion the trial judge confined it to the parties to the suit. This has been held to be error because the incident could have been the result of acts and conduct of those who were not parties to the suit and the definition, therefore, was not sufficiently comprehensive to constitute a correct and proper definition of the term "unavoidable accident". We have been cited to no case, nor in the rather extensive search we have made have we found any, which, under what we conceive to be proper interpretations, establishes under any peculiar state of facts a method of submitting the question of "unavoidable accident" differing in any material respect from that which has long been accepted by the courts and followed by the learned trial judge in submitting the question in this case.

Appellant, Hammond Taxi Company, next contends that undue emphasis was placed upon the question of whether or not its taxi cab was proceeding on Third Avenue at an excessive rate of speed because, in special issue No. 7, the question of whether or not it was proceeding at a rate in excess of twenty miles per hour was presented and, then, in special issue No. 12, the question of whether or not it was proceeding at a dangerous rate of speed was submitted. It has many times been held to be error for the court unduly to give emphasis to any phase or issue in a case, but we do not think the rule was violated here. Special issue No. 7 correctly submitted the question of whether or not the cab was being driven in excess of twenty miles per hour. Under that special issue the court was seeking a finding upon the allegation that the Hammond cab was exceeding the legal speed limit and, therefore, guilty of negligence per se. In special issue No. 12 an entirely different subject was submitted, that is, whether or not, under all the circumstances surrounding the situation, the driver was proceeding at a rate of speed that was dangerous and, therefore, in that respect, guilty of negligence.

In our opinion no error is shown under this contention.

Under its sixth contention appellant, Hammond Taxi Company, assigns error of the trial court in refusing to give to the jury a legal definition of the terms "proper lookout" and "reasonably safe control". We recognize some conflict in the holdings of the various courts of civil appeals on this question. Some of the cases cited by

appellant in support of its contention, however, show special reasons existing in the situations presented by the records then before the courts showing the necessity of definitions of these terms in those particular cases. Texas & P. Ry. Co. v. Heathington, Tex.Civ.App., 115 S.W.2d 495.

■ In the case just cited it is said, in effect, that the first issue given by the court was improper because the answer to no previous issue would have required a determination of whether or not the agents of defendant should have kept a proper lookout at all. The court held that it was necessary to have a determination by the jury of facts concerning the condition of the right-of-way before it could be known what would constitute a proper lookout. It will be seen that peculiar facts and circumstances in that case, in the opinion of the court, required a definition of the term "proper lookout". Likewise, in other cases cited, similar conditions existed. Louisiana, A. & T. Ry. Co. v. De Vance, Tex.Civ.App., 114 S.W.2d 922. This court is committed, however, to the proposition that, ordinarily, it is not necessary for the court to give to the jury a definition of the term "proper lookout" where a general definition of negligence is given in the body of the charge. Commercial Standard Ins. Co. v. Shudde, Tex.Civ.App., 76 S.W.2d 561; Lander v. Jordan, Tex. Civ.App., 87 S.W.2d 1109. It is in effect held by the Eastland Court of Civil Appeals in the case last cited that a proper legal definition of the term "keeping a proper lookout" is the failure to keep such a lookout as a person of ordinary care would have kept under the same or similar circumstances. All of the courts seem to agree that such a definition is the proper one. If the court gives to the jury the accepted definition of negligence, that is, the doing of that which a person of ordinary prudence and care would not do under the same or similar circumstances or the failure to do that which a person of ordinary care and prudence would do under the same or similar circumstances, it would seem not only unnecessary but improper again to give the same definition in its relation to the term "proper lookout". Commercial Standard Ins. Co. v. Shudde, supra.

■ Furthermore, in ordinary circumstances, such a definition is wholly unnecessary. The law requires the court to give definitions of legal terms. The purpose of the requirement is to acquaint the jury with those terms in common use by the courts but which are strangers to the common vernacular. The term "proper lookout" cannot be said strictly to be a legal term. Its frequent use in the forum does not remove it from the common language of the street and for this reason, also, in our opinion, no error is committed when the court fails or refuses to give to the jury an instruction as to what is meant by the term. What we have said applies with equal force to the term "reasonably safe control". In our opinion, these contentions are without merit.

■ Over the objection of appellants the court permitted the witness, Rush Avary, to testify concerning a conversation which he had with the driver of the Hammond cab some forty-five minutes after the collision occurred in which the witness testified that Branum, the driver, told him that he was traveling about thirty miles per hour when the collision occurred. Branum, himself, testified he was traveling about twenty-five miles an hour and when closely questioned upon cross-examination he admitted that he did not know the exact speed at which he was traveling. Regardless of whether or not the witness's statement forty five minutes after the collision constituted res gestae, we can conceive of no harm that resulted to appellants by the testimony of this witness.

Under the next contention appellants assign error of the court in refusing to instruct the jury not to consider a passage read from a book on cross-examination of Dr. Patton upon the ground that it was hearsay and the book was not shown to have been one that was recognized by the witness as authority nor so recognized generally.

■ Dr. Dutton had therefore testified as a witness for plaintiff that his examination of her injuries disclosed injury to certain muscles and that in diagnosing this phase of her case he used an electric device referred to as a galvanic current. Dr. Patton testified for appellants to the effect that his examination disclosed no such condition of the muscles. He further said that the galvanic current used by Dr. Dutton had been used to test nerve fibre but that he could not see how it would disclose the rupture of the trapezius behind the ear. When taken upon cross-

examination counsel for appellee asked Dr. Patton if it were not a fact that the authorities treat together the diagnosis of abnormalities in the nerve fibre and unnatural conditions of muscle tissue. Upon asking this question counsel produced a volume purporting to be a medical work, and in answer to the question Dr. Patton said that the text in the volume referred to does so treat them. He said he had not seen the volume before and that he did not recognize it as authority and did not know the author. He said, however, it should be an entirely good authority, being by the professor of Clinical Medicine of the Jefferson Medical College and that it should be an authoritative statement. He was then asked to read a passage from the medical work but the record does not show the text was introduced as evidence nor considered as such at the time. The purpose of having Dr. Patton read the passage from the medical work seems to have been to test his knowledge of the particular matter then being inquired about and the weight of his testimony. The treatise of the subject matter was not admissible as evidence and was not offered as such. The rule is that expert or professional witnesses may be questioned in this manner and the use of text books that are recognized as authority on the subject is permitted, especially under circumstances such as existed here where the witness had expressed doubt and at the same time approved the authoritative source of the text. Gulf, C. & S. F. Ry. Co. v. Farmer et al., 102 Tex. 235, 115 S. W. 260.

█ In connection with Dr. Dutton's testimony, in which he testified concerning the result of his physical examination of appellee, appellants requested the court to instruct the jury to the effect that if they found Dr. Dutton's testimony was based upon statements made to him by appellee to any extent, they should not consider it. The request was refused and they assign as error the action of the court in refusing to so instruct the jury. The witness was questioned very closely concerning the basis of his diagnosis and he testified positively that it was based upon his test and not upon anything the witness told him. In other words, his testimony is positive to the effect that he considered objective symptoms only in making the diagnosis and that his conclusions were in no sense based upon subjective symptoms. The substance of this complaint is that the trial judge passed upon the admissibility of Dr. Dutton's testimony relative to the diagnosis which he made instead of submitting to the jury questions, the form of which would have determined whether it was admissible or not. We find no error in this action of the court. It may be that cases could arise in which the testimony of a physician concerning the basis of his diagnosis would be so uncertain as that the court would be warranted in submitting to the jury issues of the nature for which appellants here contend, but we conceive no such conditions to be shown by the record before us. The testimony of the witness was clear and positive on the question and it was the duty of the court, not the jury, to pass upon its admissibility.

█ What we have said disposes of all of the assignments of error urged by the Hammond Taxi Company. In addition to those urged by it, the Yellow Cab Company assigns error of the court in refusing to submit special issues requested by it as to whether or not the driver of the Hammond Taxi Cab was negligent in failing to turn to the right upon entering the street intersection and failing to yield the right-of-way to the Yellow cab as it crossed the street, and in failing to stop at the stop sign in the intersection. These requested special issues were designed to establish acts of concurrent negligence on the part of the driver of the Hammond cab in addition to those about which other special issues were submitted to, and found by, the jury. The testimony and the findings of the jury upon special issues that were submitted clearly made out a case of negligence against the drivers of both taxi cabs. According to the testimony, they were joint tort-feasors and the jury found, upon ample testimony, the driver of the Hammond cab was guilty of negligence in driving at an excessive rate of speed and in not having his cab under reasonably safe control and in not keeping a proper lookout. If the court had submitted the special issues requested by the Yellow Cab Company, the refusal of which is here complained of, affirmative answers thereto would simply have established other acts of concurrent negligence on the part of the Hammond driver. If they were joint tort-feasors, under the evidence and findings upon special issues that were submitted, it would not change the responsibility

of the Yellow Cab Company as such merely to show there were other acts of negligence of which its joint tort-feasor was guilty. Findings upon the special issues requested would have constituted no defense and they were, therefore, immaterial. It is not contended that the acts of the Hammond driver therein inquired about were the sole proximate cause of the collision. In our opinion there is no merit in these contentions and they are overruled. West Texas Coaches v. Madi et al., Tex.Civ.App., 15 S.W.2d 170; Id., Tex. Com.App., 26 S.W.2d 199; Ft. Worth & D. C. Ry. Co. v. Rowe, Tex.Civ.App., 69 S.W.2d 169.

■ The next contention made by the Yellow Cab Company is that the court erred in submitting to the jury special issue No. 1 wherein the jury was asked if Joe New, the driver of the Yellow cab, was driving at a dangerous rate of speed, followed by special issues as to negligence and proximate cause, because, it says, there was no evidence that he was driving at a dangerous rate of speed. Further complaint is made of the manner in which the definition of the term "dangerous rate of speed" was given. We find no merit in these contentions. The evidence disclosed that appellee summoned the Yellow cab during the late hours of the night. Her location was approximately two blocks from the street intersection where the collision occurred. She testified that when she got into the cab the driver turned around and started off at a rapid rate of speed. She said that the cab dashed out on Third Avenue. The evidence shows there was a stop sign at the intersection of Harrison Street and Third Avenue and appellee testified, in effect, that the cab did not stop when it reached Third Avenue. The driver of the Yellow cab testified he did stop at the intersection. He said, furthermore, that when he stopped there he looked in both directions on Third Avenue, and saw the Hammond cab approaching from the east but that he thought he could cross the street before it reached the intersection and he, therefore, proceeded in an attempt to do so.

He said that he did not know the rate of speed at which the Hammond cab was approaching when he first saw it, but that it was traveling at approximately thirty-five miles per hour when he made the second glance at it. We think this testimony was sufficient to warrant the court in submitting the question to the jury.

■ As to the manner in which the court gave a definition of the term "dangerous rate of speed" the record shows that after the charge and special issues were prepared by the court and submitted to counsel, objection was made to the charge because it failed to give a definition of the term "dangerous rate of speed". When the objections were submitted to the court he prepared proper definitions of the term and included them in his charge to the jury. These definitions were given in a supplemental charge but were submitted along with the special issues. We do not conceive of any error committed in this respect. The purpose of permitting counsel to file objections to the charge before it is submitted to the jury is to give the trial judge an opportunity to make corrections and supply omissions that are necessary for a proper understanding of the case by the jury. This is the procedure that was here followed and, there being no error revealed, these assignments are overruled.

The other contentions made by the Yellow Cab Company pertain to the limitation placed by the court upon the question of reasonably safe control of the Hammond cab to the period immediately before and at the time it entered the intersection of the street and to what appellant conceives to be a duplication in the charge of the definition of proximate cause. Without discussing these questions at length, we have carefully examined the assignments and propositions pertaining to them and conclude they do not show error.

We have carefully examined all of the assignments of error and propositions of law presented by both appellants and, being of the opinion that no reversible error is shown by any of them, the judgment of the court below will be affirmed.