LOUISIANA, A. & T. RY. CO. v. DE
VANCE et al.

No. 3266.

Court of Civil Appeals of Texas. Beaumont.

March 9, 1938.

Rehearing Denied March 16, 1938.

L. L. Bowman, Jr., of Greenville, and J. M. Burford and Sam P. Burford, both of Dallas, for appellant.

J. H. Beavers, of Longview, and W. A. Kennedy and Chas. M. Winkle, both of Pittsburg, for appellees.

WALKER, Chief Justice.

Elmer De Vance was killed in the city of Pittsburg, Camp county, on the 29th day of September, 1936, in a collision with one of appellant's freight trains. Appellees, Ella De Vance and her two minor children, are the surviving wife and children of the deceased. The jury found that the servants of appellant, Louisiana, Arkansas & Texas Railway Company, as its freight train approached the crossing, failed to blow the whistle and ring the bell; that appellant's servants failed to keep "a reasonable and proper lookout," as the train approached the crossing, and that this failure on the part of the servants was negligence; that appellant's train in approaching the crossing "was being operated at a dangerous and negligent rate of speed"; and that each of these acts by appellant's servants constituted a proximate cause of the death of Elmer De Vance; the damages were assessed at $7,500. From the judgment rendered on the verdict of the jury appellant duly prosecuted its appeal to the Court of Civil Appeals at Texarkana; the case is on our docket by order of transfer by the Supreme Court.

The accident occurred within the corporate limits of the city of Pittsburg, a city with a population of about 2,500. The deceased resided in Pittsburg, and had resided there for several years. At the time he was killed, he lived on the north side of the railroad track. He was an experienced driver of automobiles, an automobile mechanic, and was driving the automobile at the time of the collision. The automobile was being driven at the time of the collision on North avenue, the most eastern street within the corporate limits of the city, the first street or avenue crossed by a train approaching from the east after entering the city limits. It was a side street, unpaved, and was not a highway, and was not one of the main streets of the city. It crossed the railroad track at an obtuse angle, the obtuse angle being on the right, and the acute angle on the left, of one approaching the crossing from the south. East of the crossing the track was straight for several hundred yards. The deceased was driving in a northeasterly direction, and the train was moving west. The train involved was a freight train of 38 cars; the engine "was working steam heavily" and could have been heard a long distance. The locomo-

924

tive and the automobile reached the crossing about the same time. Just a few feet before reaching the south rail, the deceased suddenly changed the course of his automobile to the left, away from the direction in which the train was approaching, and the collision occurred. The automobile was carried about three car lengths to the west of the crossing, and was knocked off on the right-hand side of the track, the engineer's side; the deceased approached the railroad track on the fireman's side; had the engineer been keeping a lookout as the train approached the crossing, he could not have seen the deceased. The collision occurred about 4 o'clock in the afternoon. It was estimated that the engine ran from three to five hundred feet beyond the crossing before it came to a stop.

The court gave in charge to the jury the following definition of "proximate cause": "Proximate cause, as that term is used herein, means that cause which, in natural and continuous sequence, unbroken by any new and independent cause, produces the injury and without which the result would not have occurred, there may be more than one proximate cause."

To this charge appellant reserved the following exception: "Defendant objects to the definition of proximate cause, in that it does not instruct the jury that the result or some similar result should have been foreseen in the exercise of ordinary care, and omits the element of foreseeableness of such result or some similar result."

■ On the facts of this case the court committed error in failing to include in the definition of proximate cause the element of "foreseeableness." The general rule on the issue of proximate cause was thus stated by the Commission of Appeals in Phoenix Refining Co. v. Tips, 125 Tex. 69, 81 S.W.2d 60, 61: "Before it can be said that an act of negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of such act of negligence, and that the party committing the act ought reasonably to have foreseen such consequences in the light of attending circumstances. Texas & Pacific Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162; Union Stockyards v. Peeler (Tex.Com.App.) 37 S.W.(2d) 126; Payne v. Robey (Tex.Com. App.) 257 S.W. 873; Southern Union Gas Co. v. Madeley (Tex.Civ.App.) 55 S.W.

(2d) 599; City of Dallas v. Maxwell (Tex.Com.App.) 248 S.W. 667, 27 A.L.R. 927."

■ Under the provisions of article No. 6371, R.C.S.1925, the failure of appellant's servants to ring the bell and blow the whistle as they approached the crossing constituted negligence as a matter of law. But to maintain their cause of action, it was essential that appellees have a finding that these acts of negligence by appellant constituted a proximate cause of the death of Elmer De Vance. On this point, in Waterman Lumber Co. v. Beatty, 110 Tex. 225, 218 S.W. 363, 364, our Supreme Court said: "There is no doubt that it is essential to the maintenance of an action for damages for a personal injury, founded on the violation of a statute, to establish, not only a violation of the statute, but that the violation was the proximate cause of the injury. Though the violation of the statute would be negligence per se, the action would fail without a showing of proper causal connection between the negligence and the injury. Shearman & Redfield, Law of Negligence (Street's Ed.) § 27; Texas Ry. Co. v. Bigham, 90 Tex. [223] 225, 38 S.W. 162; Spokane Ry. Co. v. Campbell, 241 U.S. [497] 510, 36 S.Ct. 683, 60 L.Ed. 1125; Stirling v. Bettis Mfg. Co. [Tex.Civ.App.] 159 S.W. [915] 916; Elk Cotton Mills v. Grant, 140 Ga. 727, 79 S.E. 836, 48 L.R.A. (N.S.) 656. It follows that there was the same necessity for a proper application of the thoroughly settled law of proximate cause in this case as in the ordinary negligence case involving no violation of a statute."

■ In San Antonio Railroad Co. v. Behne, 198 S.W. 680, the Court of Civil Appeals, on the issue of proximate cause, drew a distinction between negligence at common law and negligence per se arising out of the violation of a statutory duty. A writ of error was granted in that case and in writing the opinion for the Supreme Court, 231 S.W. 354, 355, Judge McClendon said:

"As we construe the opinion of the Court of Civil Appeals, a distinction is drawn between an act which is wrongful or negligent per se, as in violation of statute, and one which results from a failure to exercise ordinary care, in so far as the doctrine of anticipation of injury, as applied to proximate cause, is concerned.

"The conclusion thus reached is not in accord with the holdings of our Supreme Court. We do not find that any distinction is drawn as regards the rule that liability for a wrongful act is limited to such injuries as are proximately caused by such wrongful act, whether the act be wrongful per se, as for the failure to comply with a statutory duty, or wrongful at common law, as being a failure to exercise ordinary care. The difference between the two classes of wrongful acts rests solely in ·the method of determining whether they be wrongful. When it is shown that a statute has been violated, wrongfulness or negligence follows per se, as a matter of law; whereas, if the dereliction complained of depends for its wrongful character upon the principles of the common. law, it is usually a question of fact whether there has been a failure to exercise ordinary care.

"When it has been once determined that the ·act or omission complained of is wrongful or negligent, whether as a result of failure to observe a statutory or common-law duty, liability, in either case, is limited to proximately caused injuries. And the rules for determining proximate cause are the same in either case. Denison Railway Co. v. Barry, 98 Tex. [248] 250, 83 S.W. 5; Burnett v. Fort Worth Co., 102 Tex. 31, 112. S.W. 1040, 19 L.R.A.' (N.S.) 504; St. Louis Railway Co. v. Wilkes (Tex.Civ.App.) 159 S.W. 126; Missouri Railway Co. v. Dobbins (Tex. Civ.App.) 40 S.W. 861; Waterman Lumber Co. v. Beatty, 110 Tex. [225] 227, 218 S.W. 363." See, also, Echols v. Duke, Tex. Civ.App., 102 S.W.2d 483; St. Louis Railroad Co. v. Brack, Tex.Civ.App., 102 S.W. 2d 261.

■ The authorities cited deny appellee's counter proposition: "There is no necessity of including the element of foreseeableness in a definition, similar to the one given in the instant case, of proximate cause except when there is evidence of an intervening agency, or else the injury be received in such a manner as to be unusual or not demonstrated by common experience, or such an injury as under ordinary circumstances would not flow from such negligent act."

But, of course, the facts of a case may be of a nature that "foreseeableness" ·would follow as a matter of law; but such are not the facts of this case. This collision occurred in daylight, ·on a long, straight stretch of track. Had the deceased looked toward the train as he approached the crossing, he could have seen it in time to avoid the accident; the train was going up grade and the engine was "working steam heavily," which could have been heard at a long distance. On these facts it cannot be said, as a matter of law, that appellant should have foreseen that the deceased would drive his automobile in front of, or into, the freight train.

■ Appellees alleged negligence generally in terms of article 6371, that appellant's servants failed to blow the ·whistle at a distance of àt least 80 rods from the crossing. Appellant excepted tó these allegations on the ground that they were too general, and did not constitute legal negligence. To constitute negligence as a matter of law, under the provisions of ;this statute, it was necessary for appellees to allege and prove that appellant's servants failed to blow the whistle and ring the bell at least 80 rods from the crossing, and in such proximity to that point that blowing the whistle would have given notice to those intending to use the crossing that the train was approaching. Appellant's exceptions to these allegations should be sustained on another trial. 35 Texas Jurisprudence, p. 230, § 155; Houston & T. C. R. Co. v. O'Neal, 91 Tex. 671, 672, 47 S.W. 95; Davis v. Pettitt, Tex.Com.App., 258 S.W. 1046, holding approved by Sup.Ct.; Edwards v. St. Louis S. W. Ry. Co., 105 Tex. 404, 151 S.W. 289. As we understand the undisputed evidence, at a point about one-half a mile from the crossing appellant's servants did blow the whistle. On this statement, the issue as framed did not submit legal negligence.

■ The failure to keep "a reasonable and proper lookout" was submitted by the following question: "Do you find from a preponderance of the evidence that defendant's employees operating the train, failed to keep a reasonable and proper lookout, when said train was approaching said crossing at the time in question, to discover and avoid injuring any person using or about to use said crossing?"

Appellant excepted ·to the court's refusal to define the term "a reasonable and proper lookout." We are not prepared.to say that this ruling. of the court was er-

ror, but to avoid the conflict noted in Lander v. Jordan, Tex.Civ.App., 87 S.W.2d ·1109, on another trial, the .term might well be defined. On the facts of this case the engineer could not see De Vance as he approached the crossing in his automobile; this question should be reframed to meet the criticism of St. Louis Railroad Co. v. Williams, Tex.Civ.App., 104 S.W.2d 103.

 The rate of speed was submitted by the following question: "Do you find from a preponderance of the evidence that defendant's train, in approaching said ·crossing and reaching said crossing at said time and place in question, was being operated at a dangerous and negligent rate of speed?" This question was duplicitous; it submitted two issues—first, whether the rate of speed was dangerous, and, second, whether it was negligence. Texas & N. O. Railroad Co. v. Kveton, Tex.Civ.App., 48 S.W.2d 523.

■ The failure to ring the bell was submitted by the following question: "Do you find from a preponderance of the evidence that the defendant's employees, operating the engine of said train in question, failed to ring the bell on said engine at the time in question at a point at least 80 rods (440) yards from said crossing, and ring the same continuously until said engine stopped or reached said crossing?" This question was duplicitous in that it submitted statutory negligence on two theories—the failure to ring the bell "continuously until said engine stopped," and the failure to ring the bell continuously until the engine "reached said crossing." Since, under the undisputed evidence, the engine ran at least 300 feet beyond the crossing, after striking the automobile, the failure to ring the bell ·continuously after passing the crossing did not constitute a violation of Art. No. 6371; on this point, in Texas & N. O. Railroad Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741, 744, the court said: "Neither do we agree with appellee's contention that it was the statutory duty of appellant to keep the bell ringing until the train had crossed the highway."

Quoting the statute, the court said: "The pronoun 'it' can only refer back to the noun engine, and thus there is no duty on the part of the railroad to keep the bell ringing after the engine has crossed the public road."

The assignments that the issue submitted to the jury were without support in the evidence, and that the jury's answers thereto were against the overwhelming weight and preponderance of the evidence, are overruled. Appellant answered by special pleas of contributory negligence against De Vance, which were submitted to the jury and answered against it; the evidence supported these answers. The other points of error need not occur upon another trial.

For the errors discussed, the judgment of the lower court is reversed, and the cause remanded for a new trial.